Nelson E. OUTTEN, Jr., Appellant,

v.

NATIONAL RAILROAD PASSENGER CORPORATION a/k/a Amtrak.

No. 90–1520.

United States Court of Appeals, Third Circuit.

Argued Dec. 13, 1990.
Decided March 13, 1991.

Joseph Smukler (Argued), Meyer, Lasch, Hankin & Poul, Philadelphia, Pa., for appellant.

Richard L. Goerwitz, Jr. (Argued), Francis X. Brennan, Swartz, Campbell & Detweiler, Philadelphia, Pa., for appellee.

Before SLOVITER, Chief Judge,[*] MANSMANN, Circuit Judge, and SAROKIN, District Judge.[**]

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

This appeal requires us to revisit the issue of the permissible scope of a claim by a railroad employee against his employer alleging damages for injuries of an emotional nature only. Nelson E. Outten, Jr. appeals from the district court's order granting summary judgment in favor of National Railroad Passenger Corporation ("Amtrak") in Outten's negligence action brought pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* (1988) ("FELA"). Outten contends that the district court erred as a matter of law in holding that Outten was precluded from recovering for his wholly emotional injuries because he was not in the zone of danger of a train collision that occurred a mile away from where he was located. The relevant facts are undisputed; the appeal raises only an issue of law.

## I.

### *Factual Background and Procedural History*

Outten was working for Amtrak as an on-track tamper operator near Hook Tower, Pennsylvania, late one night in January 1988. In this location, there are six parallel tracks running north and south between Philadelphia, Pennsylvania, and Wilmington, Delaware, numbered 0 to 5. Outten had been assigned to work on track 2, but instead was on track 0, 38 feet east of track 2, attempting to repair the frozen travel valve on his tamper. Two of Outten's co-workers were operating a ballast regulator on track 2 and were proceeding southward down the track toward Outten's position. Outten saw the lights of the regulator when it was about a mile and a half away.

Approximately 20 minutes later, Outten noticed that an Amtrak passenger train travelling northbound from Washington, D.C. on track 2 failed to cross over from track 2 to track 1 at the Hook Tower switch. We assume for purposes of summary judgment that the Hook Tower operator negligently failed to turn the switch. As a result, Outten knew that the train and the ballast regulator would collide. Because Outten had his back turned to the ballast regulator, he did not know its precise position on track 2. He thought that the ballast regulator had travelled much farther south along track 2 than it actually had and believed, albeit incorrectly, that the impact might be close to him.

When the passenger train had travelled northward to a position parallel to Outten's, he panicked, jumped off his tamper, and ran in the same direction that the passenger train was travelling. Outten feared for his life because he thought that the collision was imminent and that the flying debris would kill him. He had seen

---

[*] The Honorable Dolores K. Sloviter became Chief Judge on February 1, 1991.

[**] Hon. H. Lee Sarokin, United States District Court for the District of New Jersey, sitting by designation.

a dead body that had been hit by a train in 1986, and feared that the same would happen to him.

The passenger train eventually did collide with the regulator, but the point of impact was at least a full mile north of the point to which Outten had run. Outten did not witness the impact, but he did see sparks from an engine explosion and some of the train cars derailing. No one was killed in the accident, although a few people sustained minor injuries. It is conceded for purposes of summary judgment that Outten suffered psychological injuries, including uneasiness and fear which rendered him unable to work for approximately four weeks.

Outten filed an action in the Eastern District of Pennsylvania under the FELA, alleging that Amtrak had negligently inflicted emotional distress upon him. Amtrak's motion for summary judgment contended that Outten's injuries are not cognizable under the FELA because Outten was not in the zone of physical danger and suffered no physical impact or physical consequences as a result of the collision.

The district court granted Amtrak's motion. It recognized that FELA actions are governed by federal common law, but applied the common law of Pennsylvania "in the absence of Third Circuit authority in this area." App. at 13. The court correctly construed Pennsylvania law as holding that a plaintiff claiming negligent infliction of emotional distress who suffered no physical impact from the force and is not related to any persons involved in the accident must show not only " 'that the negligent force was aimed at him and put him in personal danger of physical impact' " but also " 'that he actually did fear the force.' " App. at 14 (quoting *Niederman v. Brodsky*, 436 Pa. 401, 413, 261 A.2d 84, 90 (1970)). Using this test, the district court

held that Outten was unable to prevail as a matter of law.

The district court had jurisdiction pursuant to 45 U.S.C. § 56. This court has jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the district court's grant of summary judgment is plenary. *Erie Telecommunications, Inc. v. Erie*, 853 F.2d 1084, 1093 (3d Cir.1988).

## II.

### Negligent Infliction of Emotional Distress Under FELA

◼ Section 51 of the FELA provides compensation for railroad employees who suffer injuries as a result of employer negligence.[1] The Supreme Court has recognized that the FELA is a broad remedial statute, and it has adopted a standard of liberal construction in order to accomplish the congressional objectives. *See Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562, 107 S.Ct. 1410, 1413, 94 L.Ed.2d 563 (1987). Thus, the Court has stated that an employee can recover under the FELA so long as the employer's negligence "played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957); *Pehowic v. Erie Lackawanna R.R. Co.*, 430 F.2d 697, 699 (3d Cir.1970).

On the other hand, in dealing with the issue of the types of injuries which are cognizable under the FELA, the Court reiterated its earlier statement that FELA jurisprudence "gleans guidance from common-law developments." *Buell*, 480 U.S. at 568, 107 S.Ct. at 1417 (citing *Urie v. Thompson*, 337 U.S. 163, 174, 69 S.Ct. 1018, 1026, 93 L.Ed. 1282 (1949)). Significantly, in *Buell* the Court declined the invitation to make a bright line legal ruling

---

**1.** The relevant provision states, in relevant part, that:

[e]very common carrier by railroad while engaging in commerce between any of the several States or Territories ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting

in whole or part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence, in its cars, engines, appliances, machinery, track, ... or other equipment.

45 U.S.C. § 51 (1988).

that purely emotional injuries are recoverable under the FELA. *Id.* at 567, 107 S.Ct. at 1416. Instead, the Court noted that "whether one can recover for emotional injury might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity." *Id.* at 568, 107 S.Ct. at 1417. Although the Court remarked that most states now recognize a tort of intentional infliction of emotional distress and many have recognized a tort of negligent infliction of emotional distress, it stated that with respect to the latter the states "vary in the degree of objective symptomatology the victim must demonstrate." *Id.* at 569–70, 107 S.Ct. at 1418. Thus, the Court concluded that "broad pronouncements in this area might have to bow to the precise application of developing legal principles to the particular facts at hand." *Id.* at 570, 107 S.Ct. at 1418.

It follows that in seeking guiding principles to govern application of the FELA to purely emotional injuries, the district courts are not limited to the law of the forum state. Instead, they must gauge the development of common law from a broader base, which may be, but is not necessarily, reflected in the law of the particular state in which the court sits. Until the parameters of a FELA claim for negligent infliction of emotional distress are more clearly delineated, the cases must be analyzed on an ad hoc basis.

In *Holliday v. Consolidated Rail Corp.,* 914 F.2d 421 (3d Cir.1990), this court had occasion recently to consider the viability of a FELA claim for negligent infliction of emotional distress. A railroad worker, who was assigned the duties of a conductor but was not assigned a pilot to assist him even though he considered himself unqualified to perform his duties single-handedly, frequently threw the wrong switches and was almost crushed once during a switching operation. He experienced job-related stress as a result, which manifested itself in the form of heart palpitations, sleep disorders, spastic colon, tenesmus, involuntary rectal discharge, anxiety and depression. We concluded that Holliday's mere job-related stress was not cognizable under

the FELA, emphasizing that no accident ever occurred, there was no physical impact, and there was no injury to anyone other than Holliday. *Id.* at 425–26. In so holding, the majority necessarily rejected the position of the dissenting judge who would have found "as a matter of law that the FELA permits a recovery for emotional distress." *Id.* at 427 (Mansmann, J., dissenting). We are bound to follow the majority's view.

■ Although we emphasized that our holding was limited to the specific facts before us, *id.* at 426–27, our opinion made clear the policy reasons for applying a cautious approach before enlarging recovery under the FELA to encompass damages for stress-related illnesses arising out of stressful positions. We referred to the need to prevent (1) fraudulent claims; (2) incalculable and potentially unlimited damages; and (3) a flood of litigation brought by disenchanted workers. *Id.* at 424 (quoting *Kraus v. Consolidated Rail Corp.,* 723 F.Supp. 1073, 1090 (E.D.Pa.1989), *appeal dismissed,* 899 F.2d 1360 (3d Cir.1990)).

Similar reasons are also given in the Restatement (Second) of Torts § 436A, comment b (1965) for declining to impose liability for emotional disturbance which is unaccompanied by bodily harm or other compensable damage. The drafters stated:

> One [reason] is that emotional disturbance which is not so severe and serious as to have physical consequences is normally in the realm of the trivial, and so falls within the maxim that the law does not concern itself with trifles. It is likely to be so temporary, so evanescent, and so relatively harmless and unimportant, that the task of compensating for it would unduly burden the courts and the defendants. The second is that in the absence of the guarantee of genuineness provided by resulting bodily harm, such emotional disturbance may be too easily feigned, depending, as it must, very largely upon the subjective testimony of the plaintiff; and that to allow recovery for it might open too wide a door for false claimants who have suffered no

real harm at all. The third is that where the defendant has been merely negligent, without any element of intent to do harm, his fault is not so great that he should be required to make good a purely mental disturbance.

The Restatement has been one of the most influential forces shaping the development of the common law of torts in this country. Although we would not import its blanket rejection of recovery when there is only emotional injury because such an approach would be inconsistent with *Buell*, the underlying concerns expressed mirror those which have led courts to limit recovery for emotional injury to certain defined circumstances. Indeed, as of 1988, at least five states plus the District of Columbia required a contemporaneous physical injury or impact in order to recover for negligent infliction of emotional distress. *See* Comment, *Negligent Infliction of Mental Distress: A Jurisdictional Survey of Existing Limitations Devices and Proposal Based on an Analysis of Objective Versus Subjective Indices of Distress*, 33 Vill.L. Rev. 781, 792–93 & n. 59 (1988); *see, e.g., Diaz v. Eastern Airlines, Inc.*, 698 F.Supp. 18, 21 (D.P.R.1988) (under Florida law, no cause of action for negligent infliction of emotional distress without physical impact); *Saechao v. Matsakoun*, 78 Or.App. 340, 717 P.2d 165, 169 (in banc) (adopting impact rule under which there must be a direct accompanying injury to the person who suffers the emotional distress as a prerequisite to its compensability), *petition for review dismissed after settlement*, 302 Or. 155, 727 P.2d 126 (1986).

At least seventeen other states require that the plaintiff either be in the zone of danger or exhibit objective physical manifestations of the emotional injury. Comment, 33 Vill.L.Rev. at 796–98 & n. 91; *see, e.g., Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84, 90 (1970) (liability possible where plaintiff was in personal danger of physical impact because of the direction of a negligent force against him); *Savard v. Cody Chevrolet, Inc.*, 126 Vt. 405, 234 A.2d 656, 660 (1967) (recovery possible if plaintiff's reasonable fear of immediate personal injury results in substantial bodily injury or sickness).

An exception has been grafted by at least eighteen states to the physical impact/zone of danger requirements to cover the situation when a bystander has suffered emotional injuries as a result of witnessing harm to immediate family members. *See, e.g., Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979) (mother who was outside the zone of danger could recover for emotional distress after witnessing car strike and kill daughter); *D'Ambra v. United States*, 114 R.I. 643, 338 A.2d 524 (1975) (same); *Dillon v. Legg*, 68 Cal.2d 728, 441 P.2d 912, 69 Cal.Rptr. 72 (1968) (in banc) (same).

The court in *Dillon* set forth three factors to consider in determining whether emotional injury to a bystander is foreseeable: (1) whether the plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it; (2) whether the shock resulted from a direct emotional impact upon the plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and (3) whether the plaintiff and the victim were closely related. 441 P.2d at 920, 69 Cal.Rptr. at 80. The presence of these factors reduces the likelihood that fraudulent or trivial claims will be brought and ensures that the resulting injury is sufficiently foreseeable so that it is not unreasonable to hold the defendant responsible.

Outten does not assert that he falls within the scope of the bystander exception. Indeed, he was at least a full mile from the point where the passenger train collided with the ballast regulator, and he witnessed neither the initial impact nor the individual injuries. Moreover, none of the passengers aboard the train were related to Outten; those individuals injured were complete strangers. Consequently, Outten cannot ground FELA recovery on the bystander exception.

Nor does he come within the theory used by the court in *Althoff v. Consolidated Rail Corp.*, 1988 WL 61734, 1988 U.S. Dist.

LEXIS 5343 (E.D.Pa.1988), to permit recovery by a crane operator who suffered emotional injuries after timber fell from his crane and killed his co-worker. The court concluded that it is foreseeable that one who operates an instrumentality that causes another's death would be subject to considerable emotional distress from any guilt that operator might feel. In addition, the court noted that its holding would not result in a flood of litigation because it would be the unusual case where a claim would flow from an accident in which the plaintiff played a determining role.

Outten concedes that there is apparently no case that has extended the common law as far as the facts of this case to permit recovery for negligent infliction of emotional distress. Nevertheless, Outten urges this court to fashion a new rule for FELA cases so that a railroad employee can recover for purely emotional injuries provided that he or she reasonably feared personal physical injury. Not only is there no support for this proposed rule in the common law from which we are to glean guidance, but such a rule would multiply significantly the opportunity for fraud, limitless claims, and increased litigation, the very concerns that have prompted most courts, including this one, to impose some reasonable limit on claims for negligent infliction of emotional distress.

Such a rule would run counter to the approach we took in *Holliday*, 914 F.2d at 427, where we said, "[w]e are encouraged to reach our result by the realization that if we hold that a railroad employee demonstrating some possible negligence with psychological consequences will always present a jury question in a FELA action, the most attenuated claims could be advanced." Finally, it is hardly foreseeable to the railroad that one of its employees might suffer serious psychological injuries as a result of the fear of injury from a train collision over a mile away. There is a "perceived unfairness of imposing heavy and disproportionate financial burdens upon a defendant, whose conduct was only negligent, for consequences which appear remote from the 'wrongful' act." *Prosser and Keeton on Torts* 361 (5th ed. 1984).

We are not prepared to attempt to devise a litmus test for FELA claims based on negligent infliction of emotional distress that could be applied across-the-board because the Supreme Court has cautioned us to give "exacting scrutiny of the facts of the case." *Buell*, 480 U.S. at 568, 107 S.Ct. at 1417. It is sufficient for the issue before us to hold that in light of the absence of physical impact, Outten's conceded presence outside the zone of danger, his separation from the collision by a mile, and his lack of any personal responsibility for the incident, we find no solid basis in the present state of common law to permit him to recover on a cause of action based on negligent infliction of emotional distress.

There are strong policy reasons that lead us to decline to expand tort law concepts as far as Outten requests. If Outten could recover, there would be no realistic boundaries to cabin FELA claims based on every possible distressful happening to which a railroad worker is exposed. We hold instead that the district court properly concluded that Outten's claim is not cognizable under the FELA as a matter of law.

### III.

#### Conclusion

For the reasons set forth above, we will affirm the decision of the district court.

MANSMANN, Circuit Judge, dissenting.

I respectfully dissent because I believe that the majority's test is too narrowly drawn in light of the FELA's purposes as interpreted by the Supreme Court in *Atchison T. & S.F.R. Co. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), and by us in *Holliday v. Consolidated Rail Corp.*, 914 F.2d 421 (3d Cir.1990). Although I dissented in *Holliday*, I recognize its binding force and do not seek here to overturn it. *See* I.O.P. Chapter 9.1. I choose to dissent because I feel that the majority's test, while consistent with *Holliday*, is unduly restrictive.

Because of the broad remedial purpose of the FELA, I would not feel constrained to apply the restrictive zone of danger test or the other narrow theories of recovery for negligent infliction of emotional distress available under Pennsylvania tort caselaw. Rather, I would employ an objective test based upon whether the plaintiff had a reasonable basis for believing that he was in danger of immediate personal injury, caused by the employer railroad, as the result of which he suffers emotional injury. In a nutshell, the test would be whether the plaintiff reasonably believed himself to be in the zone of danger. Employing such a test, I believe that Outten has alleged facts sufficient to create a genuine issue as to whether it was reasonable for Outten to believe that he was in the zone of danger created by the train collision. Accordingly, I would vacate the grant of summary judgment and allow the claim to be presented to the jury.

In *Buell*, the Supreme Court acknowledged that "the FELA is a broad remedial statute," and that the Supreme Court has adopted a " 'standard of liberal construction in order to accomplish [Congress'] objects.' " 480 U.S. at 562, 107 S.Ct. at 1414. The Court also recognized that a "primary purpose of the Act was ... to facilitate recovery in meritorious cases." 480 U.S. at 561, 107 S.Ct. at 1413. Indeed, as the majority notes, an employee can recover under the FELA as long as the employer's negligence "played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957); *Pehowic v. Erie Lackawanna R.R. Co.*, 430 F.2d 697, 699 (3d Cir.1970). The Supreme Court in *Buell* discussed evenhandedly recent developments in the law of intentional and negligent infliction of emotional distress and recognized that "...

some states consider the context and the relationship between the parties significant, placing special emphasis on the workplace." 480 U.S. at 569, 107 S.Ct. at 1417.[1]

Indeed, the Commonwealth of Pennsylvania does consider "the context and the relationship between the parties significant, placing special emphasis on the workplace." 480 U.S. at 569, 107 S.Ct. at 1417. With regard to emotional injury, as well as physical injury incurred by an *employee* on the work site, the public policy of the Commonwealth of Pennsylvania is evidenced in the Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 1 *et seq.*, which, like the FELA, is a remedial statute that is to be liberally construed. There, a less restrictive test than general tort law or than that proposed by the majority here, is used in cases involving psychic injury.[2] A claimant must provide "objective evidence unequivocally establishing a causal connection between the claimant's injury and her employment" to recover for a psychic injury under the Workmen's Compensation Act. *Kemp v. Workmen's Compensation Appeal Bd.*, 121 Pa. Cmwlth. 23, 549 A.2d 1365 (1988). The claimant is also required to establish that the injury was caused by abnormal working conditions. *Martin v. Ketchum, Inc.*, 523 Pa. 509, 568 A.2d 159 (1990). This is the test that is most analogous to the one that I suggest should be used here for a claim of psychic injury under the FELA. The fact that the claim concerns an employer/employee relationship requires that the applicable test not be nearly so rigorous or restrictive as that which the majority requires here under the FELA.

Given the facts that Outten knew that the Amtrak train and the ballast regulator would collide and that, as far as he knew, the impact would be nearby, I would hold that Outten has presented sufficient facts

---

1. Although this reference in *Buell* as to the significance of the workplace was made with respect to the tort of intentional infliction of emotional distress, I believe that it applies with equal force to the tort of negligent infliction of emotional distress.

2. I recognize that the *quid pro quo* exacted from an employee for obtaining benefits under the Workmen's Compensation Act without resort to time-consuming litigation is that he forgoes the opportunity of recovering tort damages. Nevertheless, I do not believe that such a statutory difference between the Act and the FELA is fatal to the analogy.

to create a jury question of whether he reasonably believed that he was in the zone of danger. Accordingly, I would vacate the grant of summary judgment and permit the claim to be presented to the jury.