587 So.2d 959 (1991)
The ALABAMA GREAT SOUTHERN RAILROAD COMPANY
v.
Henry L. JACKSON.
1900284.
Supreme Court of Alabama.
September 6, 1991.
*960 Vernon L. Wells II and James E. Ferguson III of Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, for appellant.
Frank O. Burge, Jr. and Courtney B. Adams of Burge & Wettermark, P.C., Birmingham, for appellee.
HORNSBY, Chief Justice.
The Alabama Great Southern Railroad Company ("AGS") appeals from a judgment rendered on a jury verdict in favor of Henry L. Jackson in an action under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq. Jackson *961 sued AGS, alleging negligent infliction of emotional distress and claiming that AGS was negligent in conducting an unannounced "rules check" on the railroad line. The jury agreed with Jackson and awarded him $30,000 in compensatory damages.
AGS raises three issues on appeal; it challenges the trial court's denial of its motions for 1) a directed verdict; 2) a judgment notwithstanding the verdict; and 3) a new trial.
The undisputed facts are as follows: On the night of April 16, 1986, Jackson was the conductor on train number 179 traveling from Chattanooga, Tennessee, to Birmingham, Alabama. Jackson was positioned on the second engine unit, with four other crew's members appropriately positioned throughout the train. As conductor, Jackson was responsible for his crew's performing their duties within the established safety and operating rules of the railroad line. Unknown to Jackson, two supervisory employees of AGS, a Mr. Walton and a Mr. Sutton, had secretly boarded the train in Wauhatchie Tennessee, around 1:00 a.m. or 2:00 a.m. eastern standard time for the purpose of evaluating the crew's performance.[1] Walton and Sutton had climbed aboard the second locomotive because they believed no one was aboard that locomotive. However, upon boarding the locomotive, they discovered evidence of Jackson's presence, e.g., Jackson's bag or "grip," along with his clip board identifying the crew members. Walton and Sutton immediately began searching for ways to conceal their presence on the train, such as attempting to leave the train or to ride on the outside walkway of the second locomotive. They then observed Jackson approaching from the lead locomotive unit and quickly decided to hide in the small bathroom located in the "nose" of the locomotive. With the door closed, the bathroom was "very small and cramped for two men." Upon returning to the second locomotive, Jackson attempted to open the bathroom door, but it appeared to be jammed (Sutton was holding the door shut from inside the bathroom). Jackson resumed his duties of operating the train.
As the train continued moving southward, Walton and Sutton periodically opened the bathroom door to observe and evaluate Jackson as he performed his duties. Jackson occasionally heard noises coming from the bathroom area, but dismissed them as noise coming from a refrigerator located next to the bathroom. After a "substantial period of time" in the bathroom, Sutton's legs became cramped and the two men decided to leave the bathroom. To alert Jackson of their presence, they opened the bathroom door and "dropped a metal packing hook on the floor." When Jackson heard the noise, he looked toward the bathroom and saw that the door was now open. He approached the open door with his lantern, looked inside the bathroom, and saw two "figures from the chest down." He began hollering "Who is that?" and "Come out." When there was no response, Jackson again called out "Who is that?" and "Come out," whereupon Walton responded with "It's me, H.L. It's me, Walton." Walton said Jackson was visibly shaken by the incident, and Walton inquired whether Jackson was all right. The three men engaged in casual conversation for a few moments; then Walton and Sutton proceeded toward the lead locomotive for an inspection. In the lead locomotive, the two men found the brakeman sleeping, in violation of the railroad's operating rules. Later, Jackson was called to the lead locomotive, where a discussion took place concerning the violation. Soon thereafter, Walton and Sutton disembarked from the train during a stop in Attalla, Alabama. Jackson and his crew continued their run to Birmingham.
When Jackson's shift ended that morning, he began to experience chest pains and a severe headache, which continued for several days. After nonprescription drugs *962 failed to relieve his discomfort, Jackson visited a physician, Dr. Zeremba. After an examination, Dr. Zeremba placed Jackson in a hospital for a series of tests, which consisted of X-rays, an electrocardiogram (EKG), an upper gastrointestinal (G.I.) series of tests, a computerized axial tomography (CAT) scan, and a treadmill test. Dr. Zeremba placed Jackson on prescribed medication for his chest pains and headaches. Jackson's headaches persisted for approximately six months before they finally ceased. Dr. Zeremba made no conclusive findings as to the cause of Jackson's condition, but stated that the symptoms were consistent with stress; he did not indicate that Jackson was, in fact, suffering from stress or, more importantly, stress resulting from the incident of April 16, 1986. Moreover, the record contains no medical evidence of any physical injury suffered by Jackson.
On August 27, 1986, Jackson sued AGS, alleging negligent infliction of emotional distress and seeking $500,000 in damages. After a lengthy discovery process, a trial ensued in June 1990. At the close of Jackson's case, AGS unsuccessfully moved for a directed verdict. AGS renewed its motion at the conclusion of all the evidence, but the court again denied the motion. After the jury returned its $30,000 verdict in favor of Jackson, AGS motioned for a JNOV or, in the alternative, for a new trial. On October 3, 1990, AGS's two motions were denied by virtue of Rule 59.1, A.R.Civ.P. On appeal, AGS challenges the verdict as well as the trial court's denial of its motions for directed verdict, JNOV, and new trial.
AGS contends that the trial court erred in denying its motion for a directed verdict because, it argues, the FELA does not provide for a cause of action for a "purely emotional injury" unless there is evidence of "unconscionable abuse" or evidence that the plaintiff suffered a "severe emotional injury." AGS bases its argument on Atchison, Topeka & Santa Fe Ry. v. Buell, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987).
We note that our review of the denial of a directed verdict and JNOV in this FELA case is governed by the substantial evidence rule applicable in our state courts. As a general matter, FELA cases adjudicated in a state court are subject to the state's procedural rules. However, the substantive law governing such cases is federal. St. Louis Southwestern Ry. v. Dickerson, 470 U.S. 409, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985). See, also, Burlington Northern R.R. v. Warren, 574 So.2d 758 (Ala.1990), and cases cited therein. Thus, the standard for reviewing the denial of a motion for a directed verdict is whether the party with the burden of proof, in this case Jackson, has produced substantial evidence of the elements of his cause of action to require a jury's determination. Macon County Commission v. Sanders, 555 So.2d 1054 (Ala.1990); see Ala.Code 1975, § 12-21-12. With this standard in mind, we address the merits of AGS's claims.
AGS claims that the case should not have been submitted to a jury because 1) it says there was no evidence that AGS's conduct constituted "unconscionable abuse" or that Jackson sustained a "severe emotional injury," as AGS says is required by the FELA; 2) there was no conclusive expert medical testimony establishing that Jackson's physical symptoms resulted directly from the conduct of AGS's employees; and 3) there was no evidence, AGS claims, that Jackson's reaction to Walton and Sutton in the locomotive restroom was foreseeable to AGS.
The core of AGS's argument rests on the authority of Atchison, Topeka & Santa Fe Ry. v. Buell, supra. That case, relied on so heavily by AGS, does not necessarily stand for the proposition that AGS claims it does. The Buell Court stated:
"[A]lthough we do not decide today whether purely emotional injuries are cognizable under the FELA, we stress that it is the FELA that controls that injury, not the [Railway Labor Act]."
480 U.S. at 567, 107 S.Ct. at 1416. The Court went further to state:
"The question whether `emotional injury' is cognizable under the FELA is not necessarily *963 an abstract point of law or a pure question of statutory construction that might be answerable without exacting scrutiny of the facts of the case.... In short, the question whether one can recover for emotional injury may not be susceptible to an all-inclusive `yes' or `no' answer. As in other areas of law, broad pronouncements in this area may have to bow to the precise application of developing legal principles to the particular facts at hand."
480 U.S. at 568-70, 107 S.Ct. at 1417-18. The Buell Court simply did not address the question that AGS specifically contends it did. The terminology used by AGS can be found in a footnote in which the Buell Court simply commented on the unreasonableness of an argument contained in an amici curiae brief. 480 U.S. at 566-67, n. 18, 107 S.Ct. at 1416 n. 18.
The FELA was originally enacted by Congress in 1906 in order to "create[] a tort remedy for railroad workers injured on the job." Lancaster v. Norfolk & W.R.R., 773 F.2d 807, 812 (7th Cir.1985) cert. denied, 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987); Yawn v. Southern Ry., 591 F.2d 312, 317 (5th Cir.), cert. denied, 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 304 (1979). The statute's main purpose was to enable injured railroad workers to overcome a number of traditional defenses to tort liability that had previously operated to bar their actions, including contributory negligence, contractual waiver of liability, the fellow-servant rule, and assumption of the risk. Lancaster v. Norfolk & W.R.R., 773 F.2d at 813; 45 U.S.C. §§ 51, 53-55. It was passed in response to the special needs of railroad workers, Sinkler v. Missouri Pacific R.R., 356 U.S. 326, 329, 78 S.Ct. 758, 761-62, 2 L.Ed.2d 799 (1958), and must "be construed liberally for [their] protection." Fox v. Consolidated Rail Corp., 739 F.2d 929, 931 (3d Cir.1984), cert. denied, 469 U.S. 1190, 105 S.Ct. 962, 83 L.Ed.2d 968 (1985).
As the Supreme Court stated in Urie v. Thompson, 337 U.S. 163, 181-82, 69 S.Ct. 1018, 1030-31, 93 L.Ed. 1282 (1949),
"restriction[s] as to the kinds of employees covered, the degree of negligence required, or the particular sorts of harms inflicted, would be contradictory to the wording, the remedial and humanitarian purpose, and the constant and established course of liberal construction of the Act followed by this Court."
(Emphasis added.) The FELA provides that "every common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." (Emphasis added.) Because of its broad scope and somewhat open-ended wording, this Act has been interpreted to cover most injuries caused by railroad negligence, and the Act has not been limited to accidents that might be categorized as "railroad type injuries." Fox, supra; Harrison v. Missouri Pacific R.R., 372 U.S. 248, 83 S.Ct. 690, 9 L.Ed.2d 711 (1963); and Masiello v. Metro-North Commuter R.R., 748 F.Supp. 199 (S.D.N.Y.1990).
Although the FELA allows an injured railroad employee to recover for injuries caused in whole or in part by the railroad's negligence, the Act does not define negligence or delineate what type of negligent acts are redressable. See Urie v. Thompson, supra. However, "[w]hat constitutes negligence for the statute's purposes is a Federal question, not varying in accordance with the differing conception of negligence applicable under state and local laws." Urie v. Thompson, 337 U.S. at 174, 69 S.Ct. at 1027. Thus, a determination of negligence is to be resolved under the common law principles established and applied in the federal courts. Id. To prevail on an FELA claim, a plaintiff must prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation. Robert v. Consolidated Rail Corp., 832 F.2d 3 (1st Cir.1987); Adams v. CSX Transportation, Inc., 899 F.2d 536 (6th Cir.1990).
We have found through our review of FELA cases that the application of the FELA's negligence standard to a claim involving *964 negligent infliction of emotional distress remains an unsettled area of law. See Atchison, Topeka & Santa Fe Ry. v. Buell, supra, and Adams v. CSX Transportation, Inc., supra. Several circuits have considered such a claim and have reached a variety of conclusions.
In Adams v. CSX Transportation, Inc., supra, and Stoklosa v. Consolidated Rail Corp., 864 F.2d 425 (6th Cir.1988), the Court of Appeals for the Sixth Circuit considered the claim, but refused to answer whether such a claim is cognizable under the FELA, because it determined that the essential element of foreseeability was missing from the plaintiff's claim. In Lewy v. Southern Pacific Transportation Co., 799 F.2d 1281 (9th Cir.1986), the court stated as dictum that the FELA does cover claims for negligent infliction of wholly emotional injuries, but it did not allow such a claim. In Taylor v. Burlington Northern R.R., 787 F.2d 1309 (9th Cir.1986), the court held that the FELA applies to purely emotional injuries. In that case, a railroad employee was allowed to recover on a claim that harassment by a railroad foreman caused him to suffer paranoid schizophrenia. The District Court for the District of Montana reached a similar conclusion in Toscano v. Burlington Northern R.R., 678 F.Supp. 1477 (D.Mont.1987), where it held that "precedent in this circuit recognizing the right of railroad employees to assert claims under the FELA for `wholly mental injury' stands unassailed." In Hammond v. Terminal R.R. Association of St. Louis, 848 F.2d 95 (7th Cir.1988), cert. denied 489 U.S. 1032, 109 S.Ct. 1170, 103 L.Ed.2d 229 (1989), the court foreclosed an action alleging emotional injuries absent some physical contact or threat of physical contact. In Moody v. Maine Central R.R., 823 F.2d 693, 694 (1st Cir.1987), the court stated, "We discern from the Buell opinion an attempt to leave the door to recovery for wholly emotional injury somewhat ajar but not by any means wide open." In Netto v. Amtrak, 863 F.2d 1210, 1213 (5th Cir.1989), the court stated that Buell "appears to invite the lower courts to parse the FELA in light of the specific facts of later cases," but it affirmed a summary judgment against the claim on the ground that the plaintiff had failed to provide evidence of unconscionable or outrageous conduct by the defendant railroad. More recently, in Outten v. National R.R. Passenger Corp., 928 F.2d 74 (3d Cir.1991), the court stated that "[u]ntil the parameters of a FELA claim for negligent infliction of emotional distress are more clearly delineated, the cases must be analyzed on an ad hoc basis." But see Outten, 928 F.2d at 79 (Mansmann, J., dissenting) (as a matter of law, the FELA provides recovery for negligent infliction of emotional distress). See, also, Holliday v. Consolidated Rail Corp., 914 F.2d 421 (3d Cir.1990), cert. denied ___ U.S. ___, 111 S.Ct. 970, 112 L.Ed.2d 1057 (1991) (Mansmann, J., dissenting) ("FELA permits a recovery for emotional distress"). 914 F.2d at 424.
Our review of this unsettled area of the law reveals that a majority of the cases cited above indicate that a claim alleging negligent infliction of emotional distress is cognizable under the FELA, but that often claimants have not provided sufficient proof to sustain such a claim. In light of this authority, this Court holds that under the facts presented in this case, Jackson presented sufficient evidence to sustain his claim of negligent infliction of emotional distress. Netto v. Amtrak, and Outten, supra. See, also, Taylor v. Burlington Northern R.R., 787 F.2d 1309 (9th Cir.1986) (an employee can recover for a purely emotional injury if that injury occurs at the workplace and the injury is caused by the negligence of an officer, employee, or agent of the carrier).
In the instant case, AGS had instructed Walton and Sutton to conduct secret job evaluations of its employees during the night shifts. AGS continued this practice, despite its acknowledgment of vandalism occurring on its trains and its cautioning its employees to be on the "lookout for anything unusual." To further compound the problem, Walton and Sutton hid in the bathroom of the second locomotive in the early hours of the morning in an effort to remain unseen while continuing to perform an evaluation. When the two men made *965 the decision to exit the bathroom, they even shrouded their exit in mystery by first throwing an object on the floor to get Jackson's attention and then not answering his inquiry as to who was in the bathroom. Even then, Walton and Sutton waited for Jackson to approach them in the darkened bathroom. Finally, when Jackson approached the two men with his night lantern, they identified themselves and left the bathroom. Both admitted that Jackson appeared frightened.
It is evident from the record that Jackson had no expectation that any supervisors would be on his train, because he had been evaluated only a month earlier. His fear may very well have stemmed from having been warned to beware of vandals on the trains. Apparently, the jury concluded that when Jackson approached the open door of the darkened bathroom around 2:00 in the morning and saw two figures from the chest down, he had a reasonable basis for believing that he was in danger of immediate personal injury; that that belief caused him to suffer an emotional injury; and that the consequences of that injury caused the various physical problems Jackson suffered in the following months. The jury also apparently concluded that Jackson's emotional injury was foreseeable and that his injury was proximately caused by the conduct of AGS and its employees.
This Court is required to presume that the jury verdict is correct, and we will not set it aside unless the verdict is the result of bias, passion, prejudice, or other improper motive. Brown v. Seaboard Coast Line R.R., 473 So.2d 1022 (Ala.1985).
The strength of the jury verdict is based upon the right to trial by jury, White v. Fridge, 461 So.2d 793 (Ala.1984), and a jury verdict is presumed to be correct. Alpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160, 162 (Ala.1988). This presumption is strengthened by the trial court's denial of a motion for a new trial.
"When a jury is the trier of fact, it is not for the trial judge, nor an appellate court, to attempt to determine with mathematical certainty that all of the various elements of evidence offered by the parties regarding specific costs and credits precisely equal the amount of the jury's verdict. We do not have trial by computer, nor do we have post-trial, or appellate review by the computer. The reviewing court does not substitute its own judgment as to the amount of damages for that of the trier of fact."
G.M. Mosley Contractors, Inc. v. Phillips, 487 So.2d 876, 879 (Ala.1986). See also Hollis v. Wyrosdick, 508 So.2d 704 (Ala. 1987).
"Upon review of a jury verdict, we presume that the verdict was correct; we review the tendencies of the evidence most favorably to the prevailing party; and we indulge such reasonable inferences as the jury was free to draw from the evidence. We will not overturn a jury verdict unless the evidence against the verdict is so much more credible and convincing to the mind than the evidence supporting the verdict that it clearly indicates that the jury's verdict was wrong and unjust."
Campbell v. Burns, 512 So.2d 1341, 1343 (Ala.1987). (Citation omitted.) See also Ashbee v. Brock, 510 So.2d 214 (Ala.1987); Jawad v. Granade, 497 So.2d 471 (Ala. 1986); and White v. Fridge, supra.
Although the law governing negligent infliction of emotional distress under the FELA is "unsettled," the majority of the jurisdictions that have considered the question recognize such a cause of action under a particular set of facts. We join those jurisdictions.
Our review of the record establishes that Jackson presented substantial evidence of the elements of his cause of action. Here, the record establishes negligence and extreme conduct that placed Jackson in a situation where he was subject to a severe emotional shock. Under the facts of this case, we find no error in the trial court's denial of AGS's motions for directed verdict, new trial, and JNOV. Accordingly, the judgment below is affirmed.
AFFIRMED.
*966 SHORES, ADAMS, HOUSTON, KENNEDY and INGRAM, JJ., concur.
MADDOX and STEAGALL, JJ., dissent.
STEAGALL, Justice (dissenting).
The plaintiff, Henry L. Jackson, concedes that there is apparently no case extending the common law as far as the facts of this case to permit recovery for negligent infliction of emotional distress. Nonetheless, Jackson has asked this Court to set forth a new rule for FELA cases so that a railroad employee may recover for purely emotional injuries provided that he or she reasonably feared personal physical injury. In response, although it admits such a claim is an "unsettled" area of the law, the majority is creating such a rule and is allowing Jackson to recover for emotional distress.
I do not feel that this Court is at liberty to devise a federal standard for FELA claims based on negligent infliction of emotional distress. I am especially concerned with the majority's creating a federal cause of action for negligent infliction of emotional distress when this state does not recognize such a cause of action. See Allen v. Walker, 569 So.2d 350 (Ala.1990), and cases cited therein.
As a state court, we must be cautious in our approach to FELA cases, because we are bound by the law established by the federal courts and are not entitled to enlarge that law. Salotti v. Seaboard Coast Line R.R., 293 Ala. 1, 299 So.2d 695 (1974), and cases cited therein. Nonetheless, the majority has established a rule that is absent from the federal common law. As the court warned in Outten v. National Railroad Passenger Corp., 928 F.2d 74, 79 (3d Cir.1991):
"Not only is there no support for this proposed rule in the common law from which we are to glean guidance, but such a rule would multiply significantly the opportunity for fraud, limitless claims, and increased litigation, the very concerns that have prompted most courts, including this one, to impose some reasonable limit on claims for negligent infliction of emotional distress."
More recently, the Outten decision has been followed in Huber v. National Railroad Passenger Corp., [Ms. 90-2045, April 17, 1991] 1991 WL 61149 (E.D.Pa.1991), and Smith v. Southeastern Pennsylvania Transportation Authority, [Ms. 88-5879, July 9, 1991] 1991 WL 127066 (E.D.Pa. 1991).
In Holliday v. Consolidated Rail Corp., 914 F.2d 421 (3d Cir.1990), the court foreclosed an action based on emotional injuries and warned of the dangers resulting from establishing a rule like the one the majority has created here:
"We are encouraged to reach our result by the realization that if we hold that a railroad employee demonstrating some possible negligence with psychological consequences will always present a jury question in a FELA action, the most attenuated claims could be advanced."
914 F.2d at 427.
I find no authority in the present state of the common law to permit Jackson to recover on a cause of action based on negligent infliction of emotional distress. Thus, I would hold that the trial court erred in not directing a verdict for Alabama Great Southern Railroad Company.
MADDOX, J., concurs.
NOTES
[1] Walton and Sutton had planned to perform a job evaluation of the crew of the "Purvis coal train"; however, that train had left the Chattanooga train station earlier than scheduled. Thus, Walton and Sutton boarded train number 179 instead. After the two boarded the train, they decided to conduct an evaluation of Jackson and his crew, despite the fact that Walton and Sutton had conducted an evaluation of Jackson and his crew the previous month.