**James E. GOTTSHALL**

v.

**CONSOLIDATED RAIL CORPORATION.**

Civ. A. No. 89–3102.

United States District Court, E.D. Pennsylvania.

Sept. 30, 1991.

John J. O'Brien, Jr., Philadelphia, Pa., for plaintiff.

D. Scott Morgan, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

In this Federal Employers' Liability Act case, plaintiff seeks damages for the emotional distress he suffered as a result of a co-worker's death. His employer, the defendant, Consolidated Rail Corporation, moves for summary judgment. After considering the record, both parties' briefs, and oral argument, I will grant the motion.

## I. BACKGROUND

On August 10, 1988, plaintiff, James E. Gottshall, was replacing defective railroad track with seven other Conrail employees near Watsontown, Pennsylvania. The day was extremely humid and the temperature exceeded ninety degrees.

Replacing rails is hard physical labor, especially during hot weather. Moreover, on this day the group was under time pressure. For various reasons, the most strenuous activity did not begin until after noon, and supervisors instructed the group to finish the assignment by the end of the day.

In addition, these workers were mostly older. One man had previously suffered a heart attack and another a stroke. Conrail knew these facts and provided water at the work site, but discouraged the workers from taking frequent breaks because of the time pressure.

At about 2:45 P.M., Mr. Gottshall saw Richard Johns, a coworker and longtime friend, fall over. When workers reached Mr. Johns to assist him, they saw he was conscious. Someone gave Mr. Johns a cold compress and within five minutes, Mr. Johns was revived. The supervisor ordered the group back to work, and the employees complied without objecting. Mr. Johns continued to rest.

Five minutes later, Mr. Gottshall saw Mr. Johns fall again. Mr. Gottshall rushed to Mr. Johns and found him lying face down, turning white. Mr. Johns was not breathing, his heart was fluttering ever faster, his eyes were rolled back, and he was drooling. Mr. Gottshall began cardiopulmonary resuscitation ("CPR") on Mr. Johns, and was able to start Mr. Johns' heart momentarily. Mr. Gottshall continued his efforts until paramedics arrived.

In the meantime, Michael Norvick, Conrail's track supervisor, attempted to contact medical help. Conrail's standard procedure was to clear a radio channel and contact a dispatcher. At that moment, however, Conrail was repairing an intermediary radio base. Because the base was necessary for contacting emergency services, Norvick's radio was useless. Realizing that obtaining medical assistance from the worksite would be impossible, Norvick left in his car to summon help. Just before he reached a telephone, he was able to contact the emergency personnel by radio. He met them and lead them back to the worksite. This process took any where from thirty minutes to an hour.

When the paramedics arrived, Mr. Gottshall was performing CPR on Mr. Johns. Mr. Gottshall convinced the paramedics to use electric shock to revive Mr. Johns, but the efforts were unsuccessful. Ultimately, the paramedics decided they could do no more. They called the coroner and told the workers not to move the body before the coroner had examined it. The paramedics also directed everyone to remain at the scene until the coroner arrived.

From the outset, Mr. Johns death affected Mr. Gottshall. Other workers noticed he was emotional and upset during the incident.

Mr. Gottshall worked for the next four days, but was afraid he might suffer the same fate as Mr. Johns. Over the weekend, Mr. Gottshall felt ill. He lost his

appetite, and though he was able to return to work on the following Tuesday, he went home early. Mr. Gottshall withdrew to his basement and his father eventually found him there a few days later. On August 27, 1988, Mr. Gottshall was admitted to the Northwestern Institute of Psychiatry.

At Northwestern, Mr. Gottshall was diagnosed as having depression and post-traumatic stress disorder with symptoms that included suicidal preoccupation, anxiety, sleep onset insomnia, cold sweats, repetitive nightmares, and weight loss. Another doctor identified various emotional disorders in Mr. Gottshall, and connected them to the incident.

Mr. Gottshall sued Conrail for negligent infliction of emotional distress.

## II. ANALYSIS

Summary judgment is appropriate where there are no genuine issues of material fact, and the moving party is entitled to a decision as a matter of law. An issue is genuine if a reasonable fact finder considering the evidence presented could find for the non-moving party. In deciding a summary judgment motion, I must view all facts in favor of the non-moving party.

With these principles in mind, I will address the merits of this case.

### A. Emotional Injuries Under the FELA.

In *Atchison, Topeka, and Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), the Supreme Court refused to make a blanket rule governing emotional injuries under FELA. Rather, the court explained how "FELA jurisprudence gleans guidance from common-law developments," *id* at 568, 107 S.Ct. at 1417, and how there was little agreement among the various jurisdictions concerning emotional injury suits. The court concluded an *ad hoc* analysis was appropriate because recovery "could rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity." *Id.*

The court, however, clearly indicated that Congress intended FELA as a broad remedy to ensure railroad workplace safety, and "adopted a standard of liberal construction in order to accomplish Congress' objects." *Id.* at 562, 107 S.Ct. at 1414.

The Third Circuit discussed emotional injuries under the FELA in two recent cases. *See Outten v. National Railroad Passenger Corporation*, 928 F.2d 74 (3d Cir.1991); *Holliday v. Consolidated Rail Corp*, 914 F.2d 421 (3d Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 970, 112 L.Ed.2d 1057 (1991). In both, the court applied the *Atchison* approach and found the plaintiffs had not alleged recognizable tort claims.

In *Holliday*, the plaintiff was working as a conductor before he was fully trained to do the job. The position required the deployment of various switches, and the plaintiff made frequent mistakes. While the plaintiff did not cause any accidents, in one case, he almost crushed himself. Because of these errors, the plaintiff suffered acute stress and eventually developed severe physical symptoms. These problems forced him to stop working, and he sued the railroad under FELA. The district court granted summary judgment to the railroad.

The court of appeals affirmed noting that no recognized tort theory supported recovery. Judge Greenburg wrote every job creates stress, and that even under FELA's liberal standards, the plaintiff's injury was not compensable.

In *Outten*, a railroad employee mistakenly switched a train down the track where the plaintiff was working. Fearing a collision with electrical equipment on the track, the plaintiff fled for his life. Actually, the equipment was a mile down the rail, and the plaintiff was not hurt. After the incident, though, the plaintiff suffered psychological injuries and sued for negligent infliction of emotional distress.

Emphasizing FELA's broad, remedial purpose, the court applied Pennsylvania's relatively lenient bystander law. Despite this liberal test, the Third Circuit denied the plaintiff's claim because he could not have been physically hurt under the circumstances. In addition, the court also

noted the plaintiff's injury was not foreseeable.

These cases make my inquiry clear. First, I must decide whether the events that caused Mr. Gottshall's injury show there was a breach of duty under common law that would support a claim for the negligent infliction of emotional damage. Second, I must inquire whether Mr. Gottshall can show the other basic elements of a tort claim: foreseeability, actual cause, proximate cause, and damages.

Mr. Gottshall cannot succeed at either step. First, his circumstances do not satisfy even the most liberal requirements for a negligent infliction of emotional damages claim. Second, Mr. Gotshall cannot show his injury was foreseeable and he cannot show actual or proximate cause.

### 1. Negligent Infliction of Emotional Injury.

As the *Outten* court noted, there are fairly strict limits on claims for negligent infliction of emotional injury.

Some states require a contemporaneous physical injury before there can be recovery for an emotional injury. Here, Mr. Gottshall has made no such allegation. Other states employ the zone of danger concept. *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), the seminal case in this area, held there is a duty to a bystander if he was located near enough to the accident, was closely related to the victim, actually witnessed the event, and this experience injured him.

■ *Dillon* is inapplicable here because Mr. Gottshall and Mr. Johns were not related, but other tests are less strict. Pennsylvania's zone of danger test is among the least restrictive. It requires a negligent force that was aimed at the plaintiff and put him in fear and danger of physical impact. *See Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84, 90 (1970). I will use the *Niederman* test here keeping in mind FELA's broad, remedial aims.

Applying this relatively liberal standard to the instant facts shows there is no liability.

■ At first glance, there is intuitive merit to the idea that Conrail negligently put Mr. Gottshall in danger. The men in the work gang were mostly older, at least two had a history of illness, the weather was extraordinarily hot and humid, and defendant clearly asked the men to perform very strenuous labor at a heightened pace. In some ways, there is no surprise that one of the workers became ill.

Nevertheless, drawing the zone of danger with such a generous negligence standard would indiscriminately sweep in countless workers. Under Mr. Gottshall's theory, every older Conrail employee who worked outside on August 10, 1988, would satisfy the first requirement in the zone of danger test. For that matter, any company that asks its workers to work hard during any extreme weather conditions automatically would be held to have conceded the first element in the zone of danger test.

Such a result is simply bad law. Directing employees to perform necessary work, even though it is physically demanding and the weather is adverse, does not constitute negligence. Of course, negligence may exist if an employer does not take reasonable efforts to guard its workers against the risks of working under adverse conditions. Here, Conrail provided plenty of drinking water, and while the supervisors might have discouraged work and water breaks, no one forbade an employee's resting when he felt it necessary to do so.

■ The radio breakdown remains, though. Having employees work in a remote location without emergency communication raises a variety of issues, and in this case, the defendant violated its own standard of care.

Normally, Conrail employees who need emergency assistance can clear a channel on the railroad radio line. When Mr. Johns fell ill, Mr. Norvick followed procedure but was unable to summon help. He explained the intermediate communication base was under repair when he initiated his call. A technician had taken apart the computer without announcing the corresponding interruption in service. Essentially, defen-

dant shut down its emergency system without telling anyone about it.

■ Even assuming the radio failure constituted negligence, Mr. Gottshall cannot show he was in the zone of danger. *Niederman* presents a two pronged test, and the record shows Mr. Gottshall cannot satisfy its requirements.

Mr. Gottshall has alleged that before Mr. Johns became ill, there was a negligent force, the inoperable radio. For this period, however, Mr. Gottshall has not alleged fear. Furthermore, under the circumstances he could not possibly show he feared the lack of communication because the problem was not apparent until Mr. John's collapsed. Therefore, for the period before Mr. John's collapse, Mr. Gottshall can only show the first *Niederman* requirement.

Mr. Gottshall worked the day after the accident, and he claims he was afraid of having a heart attack and dying on the job. According to his testimony, this is the first time his fear appeared. Mr. Gottshall does not allege, let alone show, the radio problem continued after the accident. In fact, there is uncontradicted evidence to the contrary. Mr. Norvick testified he contacted a dispatcher on the radio while he was driving to get help.[1]

For this period, then, Mr. Gottshall can show the second *Niederman* requirement—fear—but he fails to allege the continued existence of a negligent force. In short, when Mr. Gottshall was subjected to the negligent force, he did not fear it would affect him—and by the time Mr. Gottshall feared he might have a heart attack and die on the job, the negligent force had ceased to exist. Since he cannot satisfy the liberal requirements of *Niederman* by showing

the coexistence of danger and fear, Mr. Gottshall cannot show Conrail breached its duty to him.

**B. The Other Elements of a Tort Claim.**

Mr. Gottshall, however, maintains this is not a zone of danger case. Rather, he argues the entire chain of events reveals defendant negligently failed to provide a safe working environment for its employees. Mr. Gottshall claims this behavior violated FELA.[2]

Assuming for the moment that Mr. Gottshall's characterization of the case is correct, his claim still fails because he cannot satisfy other requirements of a tort claim.

**1. *Foreseeability*.**

■ As I have pointed out, the first necessary element in any negligence claim is the existence of a duty. However, there is not an unlimited duty to every possible plaintiff on every possible claim. Instead, the scope of an actor's duty is limited to reasonably foreseeable risks under the circumstances. As a Pennsylvania appeals court wrote, "[t]he wrongful actions of a third party are not deemed to be foreseeable simply because the defendant could have speculated that they might conceivably occur." *Mathis v. United Engineers and Constructors, Inc.*, 381 Pa.Super. 466, 554 A.2d 96 (1989).

■ Even assuming defendant negligently failed to provide a safe working environment on August 10, 1988, Mr. Gottshall's injury was not a foreseeable risk. Here, the only possible breach of duty was Conrail's failure to provide emergency communication to employees working in a remote area. Such a mistake por-

---

**1.** Mr. Gottshall might have claimed Conrail had a policy of repairing its radio system without notice and that the negligent policy continued after the accident. This argument might satisfy the first *Niederman* requirement after Mr. Johns' death, but Mr. Gottshall never made this claim, and offers no evidence on it.

**2.** Even this characterization of the case creates insurmountable problems for Mr. Gottshall. In *Holliday*, Judge Greenburg wrote that all jobs create stress, and that stress resulting from ordi-

nary management decisions could not support a FELA claim. *See Holliday*, 914 F.2d at 425. In this case, Mr. Gottshall alleges problems with the total work environment: as he puts it "the entire ordeal." Since Conrail's decision to have the employees work on August 10, 1988, was not negligent, I consider it an ordinary management decision. Therefore, Mr. Gottshall's claim fails under *Holliday* because his injury was the result of an ordinary management decision.

tends a number of foreseeable consequences. In fact, the most tragic occurred when Mr. Johns became ill and there was a lengthy delay before medical assistance arrived. To say, however, that Mr. Gottshall's injuries were foreseeable stretches things too far.

Another railroad case, *Dobelle v. National Railroad Passenger Corp.*, 628 F.Supp. 1518 (S.D.N.Y.1986) (applying Pennsylvania's *Niederman* test), is instructive. In *Dobelle*, a rail ripped through a train car and severely injured a group of passengers. The plaintiff's physical injuries were minor, but his emotional injuries were significant.

The *Dobelle* facts reveal the critical problem with Mr. Gottshall's case. In *Dobelle*, and other emotional damages cases, the negligent force created both the physical and emotional injury. The rail crashed through the car, maimed several people, and the *Dobelle* plaintiff thought, "I was almost killed by that rail." As a result, he became emotionally distressed.

Mr. Gottshall alleges something quite different. Even assuming negligent radio repair caused Mr. Johns' death, Mr. Gottshall himself alleges he was injured by "the entirety of the ordeal." Mr. Gottshall saw Mr. Johns die and thought, "he died under these circumstances, I could too."

■ This situation is different from *Dobelle* where the rail was the result of the negligent conduct, the creator of the damage, and the stimulus for the emotional injury. Here, the inability to summon help was the result of the negligent conduct and is assumed to be the cause of Mr. Johns' death, but "the entire ordeal" was the stimulus for Mr. Gottshall's emotional injury. Although the communication breakdown is a common element, the cause of Mr. Johns' physical injuries and the cause of Mr. Gottshall's emotional injuries are different.

Since Mr. Gottshall cannot directly trace his emotional injuries to the negligence, his injury was not foreseeable.[3]

To hold otherwise would mean the defendant should have anticipated that by negligently repairing its radio, a man might have died in his friend's arms, and the friend would suffer significant emotional injuries. Such an attenuated sequence of events cannot be a foreseeable consequence.

2. *Causation.*

a. *Cause in fact.*

Mr. Gottshall also has a cause in fact problem which creates a deficiency like the one in *Outten.* Mr. Gottshall did not show Conrail's negligent act concerning the radio injured him by causing Mr. John's death.

There is simply no evidence that a faster emergency response could have saved Mr. Johns. Mr. Johns might have died if the paramedics had reached him more quickly; he might have died even if he had suffered the heart attack in a hospital.

In *Outten,* even though the wayward train actually frightened the plaintiff, the resulting crash could not have hurt him—he was a mile away from the accident. The court concluded plaintiff was out of the zone of danger because he was unable to show the negligence could hurt him.

Mr. Gottshall's position is similar. Because he cannot show the weather or the communication breakdown caused an injury that could harm him, he cannot show he was in a zone of danger. As in *Outten,* summary judgment is appropriate.

b. *Proximate cause.*

Finally, Mr. Gottshall's case poses a proximate or legal cause problem. A recent Pennsylvania Superior Court decision describes the concept:

Even where harm to a particular plaintiff may be reasonably foreseeable from the

---

3. Plaintiff's reliance on *Althoff v. Consolidated Rail Corp.*, No. 87–4384, slip op., 1988 WL 61734 (E.D.Pa. June 13, 1988), is also misplaced. In *Althoff*, the plaintiff was actually operating the crane which caused the accident: he unleashed the negligent force. This fact led Judge Gaw-

throp to conclude there was a greater chance the plaintiff would suffer emotional harm.

In this case, plaintiff was not unleashing the negligent force. Actually, if anything, he was a mitigating factor. As a result, plaintiff was not an "active participant" in the *Althoff* sense.

defendant's conduct, and that conduct is the cause-in-fact of the plaintiff's harm, the law makes a determination that, at some point along the causal chain, liability will be limited. The term "proximate cause" or "legal cause" is applied by courts to those considerations which limit liability, even where the fact of causation can be demonstrated. Because of convenience, public policy, or a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point, as no longer a "proximate" or "legal" consequence naturally flowing from the wrongdoer's conduct. To put it simply, at a certain point, negligent conduct will viewed as too remote from the harm arising to the plaintiff, and thus not a substantial factor in bringing about the plaintiff's harm. *Alumni Association, Delta Zeta Zeta of Lambda Chi Alpha Fraternity v. Sullivan*, 369 Pa.Super. 596, 535 A.2d 1095, 1098 (1987).

In this case, both public policy and a rough sense of justice compel me to conclude Mr. Gottshall cannot show proximate cause. Mr. Gottshall's injury was just too far down the causal chain, and as a result linking defendant's negligence to the harm treats the defendant like an insurer.

It is one thing to hold employers liable for the direct consequences of specific, negligent acts. It is quite another to enforce liability when one negligent act causes a chain of events, and someone is injured down the road. In this case, Conrail created the communication problem, but it is not responsible for every consequence of the ensuing ordeal.

## III. CONCLUSION

This accident was obviously a tragedy for everyone involved, and under different circumstances, another outcome might be appropriate. For the foregoing reasons, though, I find FELA does not provide a remedy for Mr. Gottshall's emotional injuries.