Vivi HANDY, Plaintiff and Appellant,

v.

UNION PACIFIC RAILROAD COMPANY, Defendant and Appellee.

No. 900638–CA.

Court of Appeals of Utah.

Nov. 12, 1992.

David S. Kunz and William R. Hadley, Ogden, for plaintiff and appellant.

J. Clare Williams and Larry A. Gantenbein, Salt Lake City, for defendant and appellee.

Before GARFF, JACKSON and ORME, JJ.

## OPINION

ORME, Judge:

Plaintiff Vivi Handy appeals the trial court's grant of defendant Union Pacific Railroad's motion for a directed verdict in this action brought under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.* Because we agree with the trial court's conclusion that plaintiff failed to prove the essential elements of a cause of action for negligence under FELA, we affirm.

## I. FACTS

It is necessary that we recite the facts in some detail. Given the posture of the case, we review the facts set forth in plaintiff's case in chief.

Plaintiff began her Union Pacific employment as an "extra-board" clerk in 1974 in Provo, Utah. She was later promoted to crew dispatcher and then to chief crew dispatcher. Plaintiff's duties as crew dispatcher included receiving calls from the train dispatcher concerning trains to be staffed; calling the train crew, usually consisting of a conductor and two or three brakemen; and performing various clerical duties.

While working in Provo, plaintiff also assumed responsibility as the "griever" for the crew dispatchers' union, the Brotherhood of Railway and Airline Clerks. In such capacity she became familiar with the collective bargaining agreement (CBA) which governed the working conditions of crew dispatchers, and with the procedure by which crew dispatcher complaints concerning working conditions were to be filed and "grieved" with the railroad.

Plaintiff performed successfully as a dispatcher in defendant's Provo yard until 1985, when Union Pacific organized the Salt Lake City Regional Crew Management System Dispatcher's Office (CMS), consolidating a number of smaller, local dispatcher offices into the regional office operation. Crew dispatchers from the consolidated local offices were to be transferred to the CMS office in Salt Lake City. The CMS office used a new computer and telephone system to call crews and covered a much larger geographical area than those covered in the individual local offices. One of the offices consolidated into CMS was the Provo office.

When plaintiff learned her job would be terminated pursuant to Union Pacific's implementation of the new dispatching system, she voluntarily "bid" for a CMS crew dispatcher job late in 1985. Plaintiff was assigned to work the 8:00 a.m. to 4:00 p.m. shift in Area 4, which was one of the two or three busiest assignments at CMS.[1] After successfully completing a six week training course in Salt Lake City, plaintiff began her new CMS position during the latter part of March 1986.

The day shift at Area 4 involved many duties, including handling between 300 and 400 telephone calls per shift, updating four code-a-phones,[2] dealing with computer down time,[3] and other miscellaneous re-

---

1. At the time of making her application, plaintiff was aware of the expanded job description for CMS dispatchers. Specifically, plaintiff was aware of the larger territorial size of Area 4, knew that she would be calling more trains with new and unfamiliar crews, knew that she would be working with new computer and automated telephone systems, and knew the job would be busier than her work in Provo.

2. During the first and fourth hours of her shift, plaintiff was required to record information upon four different code-a-phones. The code-a-phone information advised train crewmen of the current lineup of trains, estimated departure times, the order in which regularly assigned crews would go out, and the vacancies due to illness or vacation. It also showed the order in which "extra-board" employees would be called to fill any crew vacancies. Often, a code-a-phone would not record a woman's voice, and female dispatchers would need to repeat the recording two or three times before an adequate recording was made. Under normal circumstances, it took a dispatcher ten to fifteen minutes to record the four code-a-phones.

3. Occasionally, while plaintiff was on duty, the computer system unexpectedly went out of service. To enable plaintiff to continue to call crews when the computers were down, she had to refer to written records. New records had to be handwritten until the computer came on, and then entered into a computer.

sponsibilities.[4] All incoming and outgoing phone calls were monitored. The average time spent by a dispatcher on each call was computed, and the amount of time the dispatcher put the phones on "work mode"—equivalent to putting a phone on "hold"—was tabulated in seconds. Dispatchers were instructed to limit each call to less than 90 seconds, and each dispatcher's statistics were posted on the bulletin board daily.

Apparently, several other dispatchers (i.e., those working areas 1, 2, 3, and 5), an occasional roving dispatcher, and a number of supervisors were on duty during plaintiff's shift. They were supposed to be available to assist during busy times or when a dispatcher needed to leave the work station. However, these employees also had their own work, and were handling phone calls approximately 95% of the time. Thus, they were usually not available to relieve dispatchers when the dispatchers needed breaks or when calls stacked up. When a dispatcher was unable to obtain assistance during busy times, the work often backed up, aggravating an already stressful situation.

There were no scheduled work breaks at CMS. Dispatchers were expected to take breaks when the workload permitted them to do so. As required by the CBA, crew dispatchers were allowed a 20 minute paid lunch break which they could take either at or away from their desk. Most crew dispatchers chose to eat at their desks. If they desired to eat away from their desk, they were required to make arrangements with the supervisor at the beginning of the shift.

Plaintiff took extreme pride in her work as a crew dispatcher, and endeavored to perform her duties in an excellent fashion. Apparently, the combination of Area 4's heavy workload and plaintiff's reluctance to rely on others caused her to avoid leaving her desk to take breaks. Plaintiff's feeling of being tied to her work station caused plaintiff extreme stress which, in turn, exacerbated several preexisting medical problems.

Plaintiff worked at the Salt Lake CMS office from the latter part of March, 1986, to July 27, 1986. During this time she was under the medical care of Dr. James Nance, a longtime personal and family physician. During this same period of time, Union Pacific offered a seniority "buyout" to certain clerks having a right to guarantied status, which included the plaintiff. Because of her ongoing medical problems and the stress she was experiencing at CMS, and after consulting with her husband and Dr. Nance, plaintiff decided to apply for the buyout.

Prior to applying for the buyout, plaintiff apparently made at least two verbal complaints to the general and assistant managers regarding her need to be relieved in order to take restroom breaks. However, plaintiff filed no written grievances with defendant concerning the working conditions. Nor did plaintiff otherwise communicate her concern that the conditions were overly stressful, much less that they were aggravating her medical conditions and seriously jeopardizing her health.

Plaintiff applied for the buyout in May of 1986, anticipating that her application would be accepted and made effective immediately. However, Union Pacific advised plaintiff that, although her application had been accepted, she would not be able to exercise her buyout option until August 8, 1986. Plaintiff's concern over this delay generated additional stress, which further exacerbated plaintiff's medical problems. Nevertheless, plaintiff apparently did not communicate to CMS management that her health would not permit her to continue at CMS until August, and she continued her regular shifts with CMS.

Plaintiff's last day at CMS was July 27, 1986. On that day she became acutely ill while at work, experiencing headache, dizziness, and abdominal and chest pains. Upon informing her supervisor of her condition and requesting permission to leave

---

**4.** Area 4's workload, as measured by telephone calls, computer entries, and other data, was four or five times greater than the workload plaintiff handled in Provo prior to the implementation of CMS.

immediately, she was told she could not be relieved unless a replacement could be found. Some time later she was told no replacement could be found, and thus was required to finish her shift. Plaintiff finished her shift with great difficulty, then drove home and went to bed.

The following day, plaintiff visited Dr. Nance, complaining of multiple medical problems. Dr. Nance diagnosed a "complete emotional and physical collapse," and advised her not to return to work. Subsequently, defendant placed plaintiff on a medical leave of absence. Plaintiff never returned to work. Plaintiff eventually applied for and received a total disability from the Federal Railroad Retirement Board. She is presently completely disabled from gainful employment.

Plaintiff commenced this action against Union Pacific, claiming it was negligent in failing to provide a safe place to work and a sufficient number of employees to perform assigned tasks, and that Union Pacific's negligence caused her to suffer stress-induced emotional, mental, and related physical illnesses. Plaintiff also alleged that Union Pacific negligently refused to help plaintiff when she became ill during her last day of work.

Trial was to the court. At the close of plaintiff's presentation of evidence, the railroad moved for a directed verdict.[5] The court granted the motion, holding that plaintiff failed to prove a prima facie case of negligence under FELA. The court concluded that plaintiff failed to prove (1) that the railroad breached its duty of reasonable care and (2) that plaintiff's injuries were

reasonably foreseeable. The court entered judgment of dismissal in favor of the railroad.[6]

On appeal, plaintiff argues that, in granting Union Pacific's motion, the trial court impermissibly applied traditional common law negligence concepts to measure the negligence of the railroad and erred in its conclusion of law with respect to plaintiff's burden of proof on the issue of foreseeability.

## II. STANDARD OF REVIEW

■ FELA cases adjudicated in state court are subject to the forum state's procedural rules, while federal law governs the substantive issues. *St. Louis Southwestern Ry. v. Dickerson*, 470 U.S. 409, 411, 105 S.Ct. 1347, 1348, 84 L.Ed.2d 303 (1985). *See also Alabama Great Southern R.R. v. Jackson*, 587 So.2d 959, 962 (Ala.1991), *cert. dismissed,* — U.S. —, 112 S.Ct. 994, 117 L.Ed.2d 155 (1991); *Mitchell v. Missouri–Kansas–Texas R.R.*, 786 S.W.2d 659, 661 (Tex.1990), *cert. denied,* — U.S. —, 111 S.Ct. 247, 112 L.Ed.2d 205 (1992). Thus, a plaintiff who chooses to file a FELA case in state court is bound by that court's rules of procedure.

■ Under Utah Rule of Civil Procedure 41(b), the defendant in an action tried without a jury may, after the plaintiff has completed presentation of her evidence, move the court to dismiss the action if "upon the facts and the law the plaintiff has shown no right to relief." *Southern Title Guar. Co. v. Bethers*, 761 P.2d 951, 953 (Utah App.1988). Rule 41(b) is appro-

---

5. We note that during the trial to the court, and in the middle of plaintiff's presentation of her case in chief, defendant was permitted to present, out of order, the testimony of several out-of-state witnesses on the ground that urgent business required them to return to Omaha. While we see no harm in allowing the out-of-state witnesses to testify out of order, particularly since their doing so was necessitated by plaintiff's case progressing more slowly than had been anticipated, our review suggests that some of Union Pacific's evidence slipped into the trial court's findings of fact, indicating that the trial court improperly considered all of the evidence presented prior to defendant's motion, instead of considering only whether *plaintiff's* evidence

established a prima facie case. In deciding this case, we consider only plaintiff's evidence and disregard the testimony offered out of sequence by defendant.

6. The trial court and the parties characterize the court's entry of judgment in favor of Union Pacific as a directed verdict. However, because the case was tried to the court without a jury, plaintiff's case was actually involuntarily dismissed pursuant to Utah Rule of Civil Procedure 41(b). Therefore, we treat plaintiff's appeal as a challenge to the involuntary dismissal. *See, e.g., Anderson v. State Farm Fire & Cas. Co.*, 583 P.2d 101, 102 n. 1. (Utah 1978).

priately applied in two situations: when the trial judge determines the claimant's evidence fails to establish a prima facie case, which was the basis for dismissal here, and when the trial judge is not persuaded by the plaintiff's evidence. *Id.* at 954.

Whether a party has failed to prove a prima facie case is a question of law. Thus, on appeal, we accord no particular deference to the trial court's conclusions, but instead review its dismissal for correctness.[7] *Southern Title,* 761 P.2d at 954; *Walker v. Union Pac. R.R.,* 844 P.2d 335, 338 (Utah App.1992).

### III. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS UNDER FELA

#### A. General Statutory Scheme

Section 1 of FELA, which controls this case, provides, in pertinent part, that a common carrier engaged in interstate commerce "shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51. "At the core of FELA is its broad, humanitarian purpose: protection of the nation's railroad workers." *Robert v. Consolidated Rail Corp.,* 832 F.2d 3, 6 (1st Cir.1987). *Accord Sinkler v. Missouri Pac. R.R.,* 356 U.S. 326, 330, 78 S.Ct. 758, 762, 2 L.Ed.2d 799 (1958). The Supreme Court has recognized that, generally, FELA is a broad remedial statute, and has accordingly adopted a "standard of liberal construction in order to accomplish [congressional] objects." *Urie v. Thompson,* 337 U.S. 163, 180, 69 S.Ct. 1018, 1030, 93 L.Ed. 1282 (1949). *See Atchison, Topeka & Santa Fe Ry. v. Buell,* 480 U.S. 557, 561, 107 S.Ct. 1410, 1413, 94 L.Ed.2d 563 (1987). Thus, the Supreme Court has stated that an employee may recover under FELA if the employer's negligence "played any part, even the slightest, in producing the

injury or death for which damages are sought." *Rogers v. Missouri Pac. R.R.,* 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957).

In light of its intended purpose, the concept of "injury" under FELA is necessarily quite broad: "[T]he Act encompasses all reasonably foreseeable injuries which result from a railroad's failure to exercise due care with respect to its employees." *Buell v. Atchison, Topeka & Santa Fe Ry.,* 771 F.2d 1320, 1322 (9th Cir.1985), *aff'd in part, vacated in part, and remanded,* 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987). Nonetheless, FELA does not impose strict liability on employers. The Act does not purport to be a workers' compensation statute. Nor does it render the employer the insurer of the employee's safety. *See Inman v. Baltimore & O.R.R.,* 361 U.S. 138, 140, 80 S.Ct. 242, 243, 4 L.Ed.2d 198 (1959). FELA bases the employer's liability upon negligence concepts, and not upon the mere fact that an employee has been injured.

Although FELA allows a railroad employee to recover for injuries caused in whole or in part by a railroad's negligence, the Act does not define negligence. *See Urie,* 337 U.S. at 174, 69 S.Ct. at 1027. Nor does it identify what type of negligent acts are compensable. However, it is well-settled that "[w]hat constitutes negligence for the statute's purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws." *Urie,* 337 U.S. at 174, 69 S.Ct. at 1027. *Accord Adams v. CSX Transp.,* 899 F.2d 536, 539 (6th Cir.1990). Thus, a determination of negligence must be resolved according to common law principles as developed and applied by the federal courts. *Urie,* 337 U.S. at 174, 69 S.Ct. at 1027.

#### B. Emotional Distress Claims

In the instant case, plaintiff contends the railroad's negligence in failing to provide

---

**7.** However, when reviewing a dismissal granted because the trial judge was not persuaded by the plaintiff's evidence, we defer to the findings of fact made by the trial court unless they are clearly erroneous. *See Southern Title,* 761 P.2d at 954.

her with a safe place to work and in failing to provide a sufficient number of employees caused her to suffer stress-related physical and mental injuries. Specifically, plaintiff claims the action of the railroad in dramatically increasing the crew dispatcher's workload, and failing to make any provision for relief from the overwhelming volume of work by providing lunch or rest periods, created an unsafe place to work. Insofar as plaintiff claims defendant's negligence caused her "complete physical and emotional collapse," plaintiff alleges negligent infliction of emotional distress. *See generally* W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts*, § 54 at 359–65 (5th ed. 1984).

The application of FELA's negligence standard to a claim involving negligent infliction of emotional distress remains an unsettled area of law. Declining to bring some order to this confusion among lower courts, the Supreme Court recently observed:

> The question whether "emotional injury" is cognizable under the FELA is not necessarily an abstract point of law or a pure question of statutory construction that might be answerable without exacting scrutiny of the facts of the case. Assuming, as we have, that FELA jurisprudence gleans guidance from common law developments, *see Urie v. Thompson,* 337 U.S. at 174, 69 S.Ct. at 1026, whether one can recover for emotional injury might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity. For example, while most States now recognize a tort of intentional infliction of emotional distress, they vary in the degree of intent required to establish liability, and the level of physical manifestation of the emotional injury required to support recovery. Moreover, some States consider the con-

text and the relationship between the parties significant, placing special emphasis on the workplace. In addition, although many States have now recognized a tort of negligent infliction of emotional distress, they too vary in the degree of objective symptomatology the victim must demonstrate. These issues are only exemplary of the doctrinal divergences in this area. In short, the question whether one can recover for emotional injury may not be susceptible to an all-inclusive "yes" or "no" answer. As in other areas of law, broad pronouncements in this area may have to bow to the precise application of developing legal principles to the particular facts at hand.

*Atchison, Topeka & Santa Fe Ry. v. Buell,* 480 U.S. at 568, 107 S.Ct. at 1417. The Supreme Court thus left open the question whether one may recover for purely emotional injuries under FELA, indicating that lower federal courts should consult the common law for guidance. *See Plaisance v. Texaco, Inc.,* 937 F.2d 1004, 1006 (5th Cir.1991) (reading *Buell* as "an open invitation to the lower federal courts to explore the possibility of recovery under the FELA for a purely emotional injury"), *aff'd on reh'g,* 966 F.2d 166 (5th Cir.1992) (en banc); *Moody v. Maine Central R.R.,* 823 F.2d 693, 694 (1st Cir.1987) (discerning from *Buell* "an attempt to leave the door to recovery for wholly emotional injury somewhat ajar but not by any means wide open"). *See also Outten v. National R.R. Passenger Corp.,* 928 F.2d 74, 77 (3rd Cir. 1991); *Alabama Great Southern R.R. v. Jackson,* 587 So.2d 959, 964 (Ala.1991), *cert. dismissed,* —— U.S. ——, 112 S.Ct. 994, 117 L.Ed.2d 155 (1992).

Both federal and state courts have struggled with this issue in recent years and have, employing varying modes of analysis, reached a variety of conclusions.[8] Thus, it

---

**8.** Apparently there is no consensus among the various circuit and state courts that have considered the issue since *Buell.* A majority of such courts have held that negligent infliction of emotional distress is compensable under FELA. However, most courts require some physical component to the mental injury in order to state

a claim for negligent infliction of emotional distress under FELA. *See, e.g., Outten v. National R.R. Passenger Corp.,* 928 F.2d 74, 79 (3rd Cir.1991) (emotional distress not recoverable under FELA without physical impact, physical presence within zone of danger, or responsibility for accident that caused injury); *Ray v. Con-*

is unclear what types of emotional injuries, if any, are actionable under FELA.[9]

Recently, the First and Sixth circuits, as well as several federal district courts, have considered claims for negligent infliction of emotional distress, but have declined to decide whether such claims are cognizable under FELA because of their determinations that in the cases before them, the plaintiffs had failed to prove all of the essential elements of negligence. *See, e.g., Moody v. Boston & Maine Corp.,* 921 F.2d 1, 3 (1st Cir.1990); *Robert v. Consolidated Rail Corp.,* 832 F.2d 3, 7 (1st Cir.1987) (failure to establish foreseeability); *Adams v. CSX Transp.,* 899 F.2d 536, 539 (6th Cir.1990) (failure to establish breach of employer's duty or foreseeability); *Harris v. Norfolk & Western Ry.,* 720 F.Supp. 567, 568–69 (W.D.Va.1989) (failure to establish foreseeability or "unconscionable abuse"). Likewise, in this case we need not defini-

tively decide whether negligent infliction of emotional distress is, under appropriate circumstances, actionable under FELA. Even assuming such claims are actionable, plaintiff's case is deficient in two respects. As discussed in the next section of this opinion, she failed to show that Union Pacific breached its duty and that the harm she suffered was foreseeable.

## C. Negligence Under FELA

In *Teague v. National R.R. Passenger Corp.,* 708 F.Supp. 1344 (D.Mass.1989), the court adopted the majority common law rule on the elements of the tort of negligent infliction of emotional distress: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances

---

solidated Rail Corp., 938 F.2d 704, 705 (7th Cir.1991) ("injury must result from physical contact or the threat of physical contact for the plaintiff to recover under the FELA"), *cert. denied,* —— U.S. ——, 112 S.Ct. 914, 116 L.Ed.2d 813 (1992); *Gaston v. Flowers Transp.,* 866 F.2d 816, 821 (5th Cir.1989) (case-by-case approach; no recovery under analogous Jones Act for emotional injury unless plaintiff within zone of danger); *Teague v. National R.R. Passenger Corp.,* 708 F.Supp. 1344, 1347 (D.Mass.1989) (mental distress recoverable when accompanied by physical illness, injury, or other physical manifestation); *Moody v. Maine Central R.R.,* 823 F.2d 693, 695–96 (1st Cir.1987) (no recovery under FELA for emotional disturbance without precipitating physical injury); *Adkins v. Seaboard System R.R.,* 821 F.2d 340, 342 (6th Cir.) (intentional tort resulting from purely emotional injury not cognizable under FELA), *cert. denied,* 484 U.S. 963, 108 S.Ct. 452, 98 L.Ed.2d 392 (1987); *Zimmerman v. Illinois Cent. Gulf R.R.,* 220 Ill.App.3d 945, 163 Ill.Dec. 408, 410–11, 581 N.E.2d 359, 361–62 (1991) (following law of Seventh Circuit; absent offensive physical contact or harm, negligent infliction of emotional distress not recoverable under FELA despite physical manifestations of emotional distress); *Hollars v. Southern Pac. Transp.,* 792 P.2d 1146, 1152–53 (N.M.App.1989) (no recovery for mental distress under FELA absent physical injury), *cert. quashed,* 791 P.2d 465 (1990). *But see Plaisance v. Texaco, Inc.,* 937 F.2d 1004, 1009 (5th Cir.1991) (physical injury or physical contact not required as element of negligent infliction of emotional distress), *aff'd on reh'g,* 966 F.2d 166 (5th Cir.1992) (en banc); *Smolsky v.*

*Consolidated Rail Corp.,* 780 F.Supp. 283, 288–90 & n. 3 (E.D.Pa.1991) (tort of negligent infliction of emotional distress cognizable under FELA, even in absence of physical injury or physical contact); *Masiello v. Metro–North Commuter R.R.,* 748 F.Supp. 199, 207 (S.D.N.Y.1990) (railroad employee's allegations that railroad had negligently failed to protect her from assaultive behavior of co-workers with result that she developed ulcer and sustained emotional injuries held sufficient to state claim for negligent infliction of emotional distress under FELA); *Toscano v. Burlington Northern R.R.,* 678 F.Supp. 1477, 1478 (D.Mont.1987) (wholly emotional/mental injury claims cognizable under FELA); *Alabama Great Southern R.R. v. Jackson,* 587 So.2d 959, 964–65 (Ala.1991) (plaintiff stated claim for negligent infliction of emotional distress under FELA even in absence of physical injury or physical impact), *cert. dismissed,* —— U.S. ——, 112 S.Ct. 994, 117 L.Ed.2d 155 (1992).

9. We note that in *Teague v. National R.R. Passenger Corp.,* 708 F.Supp. 1344 (D.Mass.1989), the district court, following an exhaustive survey of federal law concerning the negligent infliction of emotional distress under FELA, observed that "[t]he law is becoming settled that a claim for the negligent infliction of emotional distress is cognizable under the FELA." *Id.* at 1346 (citations omitted). The court noted that courts that have considered the issue have "uniformly held negligent infliction cognizable under the FELA, ... and differ only on the elements necessary to make out such a claim." *Id.* at 1347. *See also Jackson,* 587 So.2d at 964.

of the case."[10] *Id.* at 1350. *Accord Kraus v. Consolidated Rail Corp.*, 723 F.Supp. 1073, 1088 (E.D.Pa.1989), *appeal dismissed*, 899 F.2d 1360 (3rd Cir.1990). Under this standard, FELA plaintiffs must prove the traditional elements of negligence: duty, breach, foreseeability, and causation. *Moody v. Boston & Maine Corp.*, 921 F.2d at 3; *Robert*, 832 F.2d at 6; *Adams*, 899 F.2d at 539.

### 1. No Breach of Duty

In this case, the trial court concluded, and we agree, that defendant Union Pacific had a duty to provide a safe workplace for its employees. However, we also agree with the trial court that plaintiff failed to present sufficient evidence showing defendant breached its duty.

■■■ FELA supplanted the common law duty of a railroad to provide its employees with a safe place to work. *See Bailey v. Central Vermont Ry.*, 319 U.S. 350, 352, 63 S.Ct. 1062, 1063, 87 L.Ed. 1444 (1943); *Holliday v. Consolidated Rail Corp.*, 914 F.2d 421, 427 (3rd Cir.1990) (Mansmann, C.J., dissenting), *cert. denied*, —— U.S. ——, 111 S.Ct. 970, 112 L.Ed.2d 1057 (1991). In a general sense,

> [a]n employer's duty of care in a FELA action turns ... on the reasonable foreseeability of harm. The employer's conduct is measured by the degree of care that persons of ordinary, reasonable prudence would use under similar circumstances and by what these same persons would anticipate as resulting from a particular condition.

*Ackley v. Chicago and N.W. Transp.*, 820 F.2d 263, 267 (8th Cir.1987) (citations omitted). *See Gallick v. Baltimore & O.R.R.*, 372 U.S. 108, 117, 83 S.Ct. 659, 665, 9 L.Ed.2d 618 (1963); *Moody v. Boston & Maine Corp.*, 921 F.2d at 3 (foreseeability of risk creates duty on the part of the railroad to do what it can to prevent injury from occurring); *Mitchell v. Missouri–Kansas–Texas R.R.*, 786 S.W.2d 659, 661 (Tex.1990) (for purposes of FELA, foreseeability is an element of employer's duty of care), *cert. denied*, —— U.S. ——, 111 S.Ct. 247, 112 L.Ed.2d 205 (1992). Thus, if an employee is injured because the railroad has failed to provide a safe place to work, the railroad breached its duty and may be held liable for any *foreseeable* harm. *Ackley*, 820 F.2d at 267; *Holliday*, 914 F.2d at 427.

■■■ In the instant case, the trial court concluded that plaintiff's evidence was insufficient to prove that defendant's conduct toward plaintiff in any manner constituted a breach of defendant's duty. Plaintiff's evidence showed that while she was ultimately unable to cope with the pressures of the job imposed by the heavy workload on Area 4, other employees apparently performed their duties satisfactorily and without unhealthful effects. Jo Ellen Ashworth testified on behalf of plaintiff that she and other dispatchers experienced significant stress as a result of the volume of incoming and outgoing calls received on Area 4, and that she felt a sense of having very little control over her job.[11] She reported feeling a knot in her stomach during especially stressful periods of her shift. Ashworth observed that other dispatchers, reacting to stressful situations, frequently cried or expressed anger and frustration verbally.

---

**10.** In a line of cases, the Utah Supreme Court embraced section 313 of the Restatement (Second) of Torts (1965), which encompasses virtually the same elements for the tort of negligent infliction of emotional distress as does the standard adopted by the *Teague* court. At the same time, the Supreme Court has firmly adhered to the "zone of danger" rule. *See e.g., Boucher v. Dixie Medical Center*, 194 Utah Adv.Rep. 3, 3–4 (Utah 1992); *Hansen v. Sea Ray Boats*, 830 P.2d 236, 239–43 (Utah 1992); *Johnson v. Rogers*, 763 P.2d 771, 784–85 (Utah 1988).

**11.** At trial, plaintiff called no witnesses who could testify as to the nature of the working conditions at CMS during the period plaintiff was employed there. Jo Ellen Ashworth worked as a crew dispatcher on Area 4 beginning in March of 1988, some two years after plaintiff left Area 4. She testified at trial that while working on Area 4, crew dispatchers received approximately 400 phone calls a day. Occasionally, the pressure of receiving hundreds of phone calls was compounded by computer failure, requiring dispatchers to make calls and keep records manually.

However, Ashworth also testified that she was able to leave her desk two to three times per shift to go to the restroom, and that she noticed other Area 4 dispatchers taking breaks in the break room. Ashworth never became ill at work, and plaintiff presented no evidence of other Area 4 dispatchers becoming physically and/or mentally ill as a result of work-related stress. In sum, plaintiff failed to present any substantial evidence that Area 4 was an *unsafe* work environment as opposed to a merely demanding and difficult environment. Thus, even considering only plaintiff's evidence, it is our determination that the trial court correctly concluded defendant's conduct did not constitute a breach of its duty to provide a safe workplace for plaintiff.

### 2. Lack of Foreseeability

We also agree with the district court's conclusion that plaintiff's emotional and physical breakdown was not reasonably foreseeable to defendant. The Supreme Court has observed that reasonable foreseeability of harm is an essential element of FELA negligence. *Gallick*, 372 U.S. at 117, 83 S.Ct. at 665. Plaintiff argues the trial court erred in requiring plaintiff to prove that the railroad knew or should have known that the working conditions at CMS would cause physical and emotional injury to plaintiff. Plaintiff claims her burden required her only to show that the railroad was negligent, and that she did not have the burden of proving that her specific health problems were foreseeable to defendant. Specifically, plaintiff argues that under *Rogers v. Missouri Pac. R.R.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957), if the employer's "negligence played any part, even the slightest," in producing her mental and physical injury, then the railroad is liable under FELA.

However, plaintiff misapplies the *Rogers* standard. The Supreme Court in *Rogers* relaxed the requirement of proof of proximate cause in FELA negligence cases. *Rogers* eliminated the requirement that FELA plaintiffs prove cause-in-fact *and* foreseeability in order to show proximate cause. *See Rogers*, 352 U.S. at 507–508, 77

S.Ct. at 448–49. However, as noted previously, to recover for mental injury under FELA, a plaintiff still must prove all of the elements of employer negligence: duty, breach, *foreseeability*, and causation as defined in *Rogers*. In this respect, "plaintiff's prima facie case under the act must include all the same elements as are found in a common law negligence action." *Davis v. Burlington Northern, Inc.*, 541 F.2d 182, 185 (8th Cir.), *cert. denied*, 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 613 (1976). Thus, while foreseeability is no longer a component of causation in FELA negligence cases, foreseeability, under the weight of authority, "remains an element of duty." *Mitchell*, 786 S.W.2d at 661.

Recently, in *Adams v. CSX Transp.*, 899 F.2d 536 (6th Cir.1990), the Sixth Circuit, considering a claim for negligent infliction of emotional distress under FELA, noted that " '[t]he test of foreseeability does not require that the negligent person should have been able to foresee the injury in the precise form in which it in fact occurred.' " *Id.* at 540 (quoting *Green v. River Terminal Ry.*, 763 F.2d 805, 806–07 (6th Cir. 1985)). Nevertheless, the court concluded that plaintiff's "extreme reaction" to his supervisor's berating and abusive behavior "could not reasonably be foreseen," because no complaints of this sort had been asserted against the supervisor in the many years he had worked for the railroad, and because plaintiff "never lodged any sort of complaint against [the supervisor] ... despite the plaintiff's familiarity through his union activity with the grieving process." *Id.* at 540 (quoting in part *Stoklosa v. Consolidated Rail Corp.*, 864 F.2d 425, 426 (6th Cir.1988)). This failure to lodge *specific* complaints deprived the railroad of notice that Adams's supervisor was causing his stress. In addition, the plaintiff in *Adams* appeared content to work under the supervisor's supervision, "thus suggesting to both [the supervisor] and CSX officials that the employment relationship was at least tolerable." *Id. See Stoklosa*, 864 F.2d at 426 (railroad could not reasonably have foreseen that its legitimate demotion of employee would cause employee's serious depression and subsequent request for admission to mental facil-

ity); *Robert v. Consolidated Rail Corp.*, 832 F.2d 3, 7 (1st Cir.1987) (plaintiff failed to prove railroad could or should reasonably have foreseen he would suffer heart attack from stress of which railroad was never informed). *See also Plaisance v. Texaco, Inc.*, 966 F.2d 166, 168–69 (5th Cir.1992) (en banc) (tug boat captain's post-traumatic stress disorder was not reasonably foreseeable consequence of negligently caused fire aboard another barge and, thus, captain's emotional injuries were not compensable in action against employer); *Gottshall v. Consolidated Rail Corp.*, 773 F.Supp. 778, 782–83 (E.D.Pa.1991) (employee's emotional injury resulting from witnessing co-worker's death from heart attack was not foreseeable risk; employer's failure to provide communications could not foreseeably have led to employee's post-traumatic stress disorder); *Harris v. Norfolk & Western Ry.*, 720 F.Supp. 567, 568–69 (W.D.Va.1989).[12]

■ In this case, as in *Adams*, plaintiff failed to prove defendant either knew or reasonably should have known that the working conditions in Area 4 at CMS would or reasonably might produce harm to its employees, much less the extreme reaction and complex mental and physical problems plaintiff claims she experienced. The record indicates that while plaintiff apparently complained verbally about her need for restroom breaks, plaintiff, a former union griever, never filed any written complaints concerning the allegedly unbearable working conditions that were causing her stress. Moreover, the record indicates that plaintiff's verbal complaints were limited in nature. Plaintiff simply requested relief so that she could take restroom breaks. She apparently did not state that she was experiencing health problems related to the stress she experienced at work. Thus, plaintiff's verbal complaints were insufficient to put defendant on notice that her allegedly unbearable workload was causing her health to deteriorate.

As in *Adams*, the record indicates that plaintiff performed her duties satisfactorily until the day she became ill at work, thus suggesting to her supervisors that the working conditions at CMS were "at least tolerable." *Adams*, 899 F.2d at 540. In addition, plaintiff presented no evidence that other dispatchers filed any complaints concerning any untoward effects of the overly stressful nature of the work at CMS, nor is there evidence of other dispatchers suffering adverse reactions as a result of such stress. Finally, plaintiff's own treating physician, Dr. Nance, acknowledged that plaintiff "reacted possibly more profound[ly] to the situation than if she'd been a healthy individual." Because plaintiff presented no evidence that defendant had any reason to be aware of plaintiff's apparent predisposition to stress-induced emotional and physical illness, defendant could not reasonably have been expected to foresee her extreme reaction to day-to-day stress that other employees at least tolerated.[13] Accordingly, absent the necessary element of foreseeability, plaintiff has not set forth a prima facie case of FELA negligence.

## IV. NEGLIGENT FAILURE TO PROVIDE PROMPT CARE FOR EMPLOYEE STRICKEN ILL AT WORK

Plaintiff claims she at least established a prima facie case that Union Pacific negli-

---

**12.** In two recent decisions, the Court of Appeals for the Third Circuit declined to allow recovery for emotional distress under FELA, apparently basing its decisions on the lack of foreseeability between the alleged injuries and the alleged negligence. *See Outten v. National R.R. Passenger Corp.*, 928 F.2d 74, 78–79 (3rd Cir.1991); *Holliday v. Consolidated Rail Corp.*, 914 F.2d 421, 426 (3rd Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 970, 112 L.Ed.2d 1057 (1991).

**13.** Section 313 of the Restatement (Second) of Torts, comment c, adopted by the Utah Supreme Court in *Johnson v. Rogers*, 763 P.2d 771, 784–85 (Utah 1988), places a restriction on recovery by eliminating the "thin-skulled plaintiff" rule in cases involving claims for negligent as opposed to intentional infliction of emotional distress:

[O]ne who unintentionally but negligently subjects another to ... emotional distress does not take the risk of any exceptional physical sensitiveness to emotion which the other may have unless the circumstances known to the actor should apprise him of it.

Restatement (Second) of Torts § 313 comment c. *See also Prosser & Keeton on the Law of Torts*, § 54 at 365 n. 60. There is no suggestion federal common law under FELA is to the contrary.

gently failed to promptly provide her with proper care when she became ill at work on July 27, 1986. As noted previously, we disregard the trial court's findings of fact, including those findings pertaining to the events of July 27, and, for purposes of this appeal, consider the evidence offered by plaintiff.

Plaintiff testified that upon informing her superiors of her illness, she was told she could not be relieved unless a replacement could be found. Some time later, while plaintiff was in considerable distress, she was told no replacement could be found, and that she would be required to finish her shift. Plaintiff finished her shift with great difficulty, then went home.

 To address plaintiff's contention, we must first determine what duty a railroad owes its employee to furnish her with medical aid and/or assistance when stricken ill at work. Traditionally, "in the absence of either a contractual or statutory obligation an employer is not legally bound to render medical assistance or aid to an employee who, while on the job, becomes ill or suffers injury without the employer's fault." *Southern Pac. Co. v. Hendricks*, 339 P.2d 731, 733 (Ariz.1959), *cert. dismissed*, 361 U.S. 941, 80 S.Ct. 385, 4 L.Ed.2d 362 (1960). Two exceptions to the general rule are:

> (1) when an employee, to the employer's knowledge, becomes so seriously ill while at work as to render him helpless to obtain medical aid or assistance for himself, the employer must exercise reasonable care to procure medical aid and assistance for such helpless employee; and (2) when an employer actually undertakes to furnish aid or assistance to an ill employee, he must exercise reasonable care in rendering such aid and assistance.

*Id.* This rule and its exceptions are applicable to claims brought under FELA. *Id. See also Bridgeman v. Terminal R.R. Ass'n*, 195 Ill.App.3d 966, 142 Ill.Dec. 405, 407, 552 N.E.2d 1146, 1148 *cert. denied*, 132 Ill.2d 543, 144 Ill.Dec. 255, 555 N.E.2d 374 (1990); *Rival v. Atchison, Topeka & Santa Fe Ry.*, 62 N.M. 159, 306 P.2d 648,

651 (1957). Accordingly, liability upon the railroad for failing to make such reasonable effort as may be practicable to relieve an employee stricken ill while working is established by a showing that (1) an emergency exists, (2) the employee's condition is such that the employee is "in immediate danger of loss of life or of great bodily harm," *Rival*, 306 P.2d at 651, and (3) the employer has actual or constructive knowledge of the emergency. *Id. See Randall v. Reading Co.*, 344 F.Supp. 879, 882 (M.D.Pa.1972).

 While the imposition of such a duty on the part of employers reflects the liberal construction given the FELA in order to effectuate the Act's purpose of protecting railroad workers, courts have limited its application to circumstances involving "immediate danger of loss of life or of great bodily harm." *Rival*, 306 P.2d at 651. *See Bridgeman*, 142 Ill.Dec. at 407, 552 N.E.2d at 1148 ("courts have permitted recovery in instances when railroad employees suffer fatal heart attacks during their tours of duty or have been stricken with sudden illness on the job, rendering them helpless to secure aid on their own"); *Hendricks*, 339 P.2d at 733. Thus, in order to trigger an employer's duty to render medical assistance or aid, an employee stricken ill while working must show that, by reason of her physical condition, she was unable to help and care for herself. In *Rival*, the Supreme Court of New Mexico observed that

> [t]he question of whether or not an admitted or clearly established state of facts does, or does not, show that a sick or injured employee is in such a serious condition as to cast upon the employer the duty of furnishing him prompt medical treatment, is ... one of law for the court's determination.

*Rival*, 306 P.2d at 651 (quoting *Gypsy Oil v. McNair*, 179 Okl. 182, 64 P.2d 885, 892 (1936)). Thus, the question of whether plaintiff's evidence does or does not show that plaintiff was in such serious condition so as to trigger Union Pacific's duty to render prompt medical assistance or relief

in the instant case is a question of law. *See id.*

■ Plaintiff's evidence shows she complained of head, stomach, and chest pains, and requested to be relieved before finishing her shift. According to plaintiff's testimony, she was crying and felt she might die. However, plaintiff admitted she finished her shift, albeit in great pain; took restroom breaks when she needed to; answered and made any number of phone calls, as usual; and was able to effect "turnover" to the dispatcher relieving her at the end of her shift. Plaintiff's physical ability to continue her duties indicates her condition was not so serious that she was rendered "helpless to secure her own aid."

■ In addition to being able to complete her work despite the pain, when her replacement finally arrived at the end of her shift, plaintiff put her hand in front of her face to conceal the fact that she had been crying. While it was obvious to plaintiff's supervisors that she was indeed experiencing some form of distress, plaintiff's physical ability to finish her shift, and her attempt to conceal her distress, indicate that the railroad had neither actual nor constructive notice that plaintiff was in "immediate danger of loss of life or great bodily harm." Thus, while it is unfortunate that plaintiff's supervisors failed to relieve plaintiff of her duties on the day she became ill at work, plaintiff's evidence has failed to show (1) that her sudden illness rendered her helpless to secure her own aid, and (2) that the railroad had either actual or constructive notice that plaintiff's condition was so serious as to amount to an emergency situation. Accordingly, even viewing plaintiff's evidence on this point as true, plaintiff has failed to show defendant was negligent in failing to provide prompt relief when she became ill at work.

## V. CONCLUSION

We conclude that the district court properly entered judgment in favor of defendant, Union Pacific Railroad, based upon plaintiff's failure to prove two essential elements of recovery for negligence under FELA: (1) that defendant breached its duty to provide a safe workplace and (2) that plaintiff's stress-induced emotional and physical injuries were reasonably foreseeable to defendant. We also conclude that even viewing plaintiff's evidence as true, plaintiff failed to establish a prima-facie case that defendant was negligent in failing to provide prompt relief to plaintiff when she became suddenly ill at work. Accordingly, the judgment of dismissal is affirmed.

GARFF and JACKSON, JJ., concur.