2018 UT App 116

## THE UTAH COURT OF APPEALS

HAYLEE CHEEK,
Appellant,

*v.*

IRON COUNTY, IRON COUNTY ATTORNEY, AND CEDAR CITY,
Appellees.

Opinion
No. 20160787-CA
Filed June 14, 2018

Fifth District Court, Cedar City Department
The Honorable Marvin D. Bagley
No. 150500081

Tyler B. Ayres and Daniel Baczynski, Attorneys
for Appellant

Jesse C. Trentadue and Noah M. Hoagland,
Attorneys for Appellees Iron County and Iron
County Attorney

Robert C. Keller and Timothy J. Bywater, Attorneys
for Appellee Cedar City

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and JILL M. POHLMAN concurred.

ORME, Judge:

¶1    After her civil rights claims were dismissed in federal court, Haylee Cheek filed a complaint in state district court alleging that she had been treated with unnecessary rigor, in contravention of the Utah Constitution. As she had in her federal suit, she named as defendants Iron County; the Iron County Attorney, Scott Garrett; and Cedar City (collectively, the Defendants). Upon a motion from each of the Defendants, the state district court dismissed Cheek's claims without reaching

any conclusions regarding their substantive merit. Cheek appeals. We affirm in part and reverse in part.

## BACKGROUND[1]

### *The Federal Suit*

¶2    On May 28, 2010, Cheek filed a complaint in Utah's federal district court alleging that, during her arrest and subsequent detention, the Defendants had violated her civil rights.[2] The complaint contained seven causes of action arising under section 1983 of the United States Code and three arising under the "unnecessary rigor" provision of the Utah Constitution.[3] In support of her state-law claims, Cheek alleged that the named defendants had violated her constitutional rights by setting excessive bail, by compelling her to provide blood and urine samples pursuant to an illegal warrant, and by failing to protect her from a sexual assault during her incarceration.

---

1. When reviewing a motion to dismiss, "we review the facts only as they are alleged in the complaint. We accept the factual allegations as true and draw all reasonable inferences from those facts in a light most favorable to the plaintiff." *Gregory v. Shurtleff*, 2013 UT 18, ¶ 8, 299 P.3d 1098 (citation and internal quotation marks omitted).

2. Following her arrest, Cheek was charged with several serious crimes, including aggravated robbery and aggravated kidnapping, for which she was ultimately convicted. We affirmed those convictions. *See State v. Cheek*, 2015 UT App 243, 361 P.3d 679.

3. *See* Utah Const. art. I, § 9 ("Persons arrested or imprisoned shall not be treated with unnecessary rigor.").

¶3 In the initial complaint, Cheek listed Garrett as a defendant in both his official and individual capacities. But Cheek later amended the complaint to include Garrett only in his official capacity. Garrett then filed a motion to dismiss. The federal court granted the motion on November 18, 2014, reasoning that the complaint stated that the individual defendants were sued only in their official capacity. The court explained:

> An official-capacity suit is another way of pleading an action against an entity of which an officer is an agent. What's more, a person sued in his official capacity has no stake, as an individual, in the outcome of [the] litigation. Accordingly, the claims against all individual defendants . . . are dismissed.

The court specified in its order that Garrett's dismissal was "with prejudice."

¶4 Following Garrett's dismissal, Cedar City and Iron County moved, respectively, for summary judgment and judgment on the pleadings. Rather than opposing these motions, Cheek conceded that her "claims under federal law may be procedurally, legally and/or factually insufficient" and agreed that they should be dismissed with prejudice. In light of this concession, the federal court dismissed Cheek's suit, noting that she had the option to refile her state-law claims in a state court of general jurisdiction.

*The State Suit*

¶5 In May 2015, Cheek commenced this action in Utah's Fifth District Court against the Defendants and several Cedar City and Iron County departments and employees. In her complaint, she reasserted two of her three unnecessary rigor claims, this time narrowing the scope of her suit to the allegations that the Defendants had illegally compelled her to provide a urine

sample and that they had failed to prevent her sexual assault. After filing her complaint, Cheek attempted to effect service on the Defendants, with, as it turns out, only mixed success.

¶6     In October 2015, the Defendants filed motions to dismiss. Cedar City argued that Cheek's claims against it should be dismissed on jurisdictional grounds because she had failed to file a notice of claim prior to commencing her action, in accordance with the Governmental Immunity Act of Utah. Garrett, for his part, argued that Cheek's claims against him were barred by the doctrine of res judicata. Finally, Iron County argued that the state district court had not effectively exerted jurisdiction over the county because Cheek did not serve the summons and complaint on the County Clerk, as required by rule 4 of the Utah Rules of Civil Procedure. Instead, she had served the County Recorder.[4]

¶7     The state district court granted Cedar City's motion in November 2015, and it granted Garrett's and Iron County's motions several months later in a bifurcated order. In its first "partial" order, entered in July 2016, the court dismissed all Iron County departments, as they are not separate legal entities and cannot be sued. The court also dismissed all employees named in the suit, with the exception of Garrett, explaining that Cheek had voluntarily relinquished her claims against them during the hearing on Iron County's motion. The court then entered its second order in August 2016, wherein it dismissed Cheek's claims against Garrett with prejudice and her claims against Iron County without prejudice. On appeal, Cheek concedes that all of

---

4. Cheek suggests that she was informed by an unnamed Iron County employee that service upon the County Recorder would be effective. She does not, however, allege that the County Recorder accepted the summons and complaint with the willful or fraudulent purpose of evading effective service on the County.

her claims were time-barred by the time the court ruled on Iron County's motion, meaning that, if it stands, the court's second order effectively put an end to her suit. Cheek now appeals the district court's orders.

ISSUES AND STANDARDS OF REVIEW

¶8    Cheek presents three issues for our review. In her opening brief, Cheek ascribes error to the state district court's conclusion that it lacked jurisdiction over the subject matter of her suit against Cedar City. The court's decision should be reversed, she argues, because it rested on the incorrect premise that her unnecessary rigor claims were subject to the notice-of-claim provisions of Utah's Governmental Immunity Act. Rather than contesting this point, Cedar City concedes that a plaintiff's right to assert an unnecessary rigor claim is not subject to the Governmental Immunity Act and argues that we should affirm on mootness grounds instead.

¶9    Accordingly, the first issue presented for our review becomes this: To successfully assert an unnecessary rigor claim against a governmental employer, must a plaintiff name, as a party to the action, the individual employee whose conduct gave rise to the claim? If so, Cedar City argues, then the district court's errant jurisdictional determination is mooted by the district court's July 2016 order, in which it dismissed all of Cheek's claims against Cedar City and Iron County employees with prejudice. Whether a plaintiff has successfully stated a prima facie claim for relief is a question of law, which we review for correctness. *Handy v. Union Pac. R.R.*, 841 P.2d 1210, 1215 (Utah Ct. App. 1992).

¶10   The second issue for our review is whether the state district court erred in concluding that Cheek's claims against Garrett were barred by the doctrine of res judicata. "Whether a claim is barred by res judicata is a question of law that we

review for correctness." *Gillmor v. Family Link, LLC*, 2012 UT 38, ¶ 9, 284 P.3d 622.

¶11 The third issue is whether the court erroneously concluded that it did not have personal jurisdiction over Iron County given Cheek's failure to serve the County Clerk. "Whether the district court had personal jurisdiction is a question of law, which we review for correctness." *Bel Courtyard Invs. v. Wolfe*, 2013 UT App 217, ¶ 9, 310 P.3d 747. And "[t]o the extent this issue requires us to interpret rules of civil procedure, it presents a question of law," which we also "review for correctness." *Harris v. IES Assocs., Inc.*, 2003 UT App 112, ¶ 25, 69 P.3d 297 (citation and internal quotation marks omitted).

ANALYSIS

I. Cedar City

¶12 We begin by addressing Cedar City's mootness argument. As we briefly explained above, Cedar City concedes that the district court erred in determining that it did not have jurisdiction over Cheek's unnecessary rigor claims against it. Nevertheless, the City contends that the jurisdictional issue was mooted by the court's July 2016 order. In that order, which Cheek has not challenged on appeal, the court dismissed with prejudice Cheek's claims against every Cedar City employee named as a defendant in the complaint. Cedar City contends that this is fatal to Cheek's suit against it because an unnecessary rigor claimant proceeding against a governmental employer must, in order to survive a motion to dismiss, name as a defendant the particular employee who subjected her to unnecessary rigor. Because we see no basis for this purported requirement in the law, we reject Cedar City's mootness argument and reverse the district court's decision dismissing the City from the action.

¶13    As an initial matter, we note that we will decline to reach the issue of whether the district court had jurisdiction over the subject matter of a suit if we determine that the issue has become moot on appeal. In general, "subject matter jurisdiction goes to the heart of a court's authority to hear a case," and as such, "it is not subject to waiver and may be raised at any time." *In re adoption of Baby E.Z.*, 2011 UT 38, ¶ 25, 266 P.3d 702. But "[w]e refrain from adjudicating issues when the underlying case is moot," *Burkett v. Schwendiman*, 773 P.2d 42, 44 (Utah 1989), including issues of jurisdiction, *Towner v. Ridgway*, 2012 UT App 35, ¶ 5, 272 P.3d 765. Thus, we have echoed our Supreme Court in stating that "where any determination an appellate court might make regarding a lower court's jurisdiction will not affect the rights of the parties in relation to any issues other than those . . . already declared moot, the issue of jurisdiction is also moot." *Id.* (omission in original) (citation and internal quotation marks omitted).

¶14    Cedar City has not persuaded us that Cheek is required to name a City employee *as a party* in order to proceed with her suit. The City maintains that our Supreme Court's decision in *Bott v. Deland*, 922 P.2d 732 (Utah 1996), *abrogated on other grounds by Spackman v. Board of Educ.*, 2000 UT 87, 16 P.3d 533, stands for the proposition that a plaintiff cannot maintain an unnecessary rigor action against a governmental employer unless she names as a defendant the governmental employee who she believes is responsible for her injuries. In support, the City relies on the following language from the Court's decision: "[A] prisoner may not recover damages" against the government under the unnecessary rigor provision "unless he shows that his injury was caused by a prison employee who acted with deliberate indifference or inflicted unnecessary abuse upon him." *Id.* at 740. But we do not read this language to mean that an unnecessary rigor claimant cannot proceed against a governmental entity without naming one of its employees as a defendant in her lawsuit. Rather, it simply means that she may not hold a

governmental entity liable for the torts of an individual without proving that the entity had the right to control that individual's conduct at the time of the tort. This requirement does not necessitate naming the individual tortfeasor as a party to the suit—only that the responsible employee or employees be identified in due course. Indeed, in her complaint Cheek describes actions that would necessarily be attributable to individual city employees.

¶15 Our interpretation of the Supreme Court's language in *Bott* accords with ordinary rules of agency law, *see Mounteer v. Utah Power & Light Co.*, 823 P.2d 1055, 1058 (Utah 1991) (holding that "[c]ommon law rules of agency and respondeat superior" govern an employer's liability for the alleged defamatory statements of an employee who was not named as a defendant), and Cedar City gives us no compelling reason to believe that the Court sought to undercut this time-honored principle with its decision in *Bott*. Accordingly, we conclude that Cheek's claims against Cedar City are not moot. Therefore, given Cedar City's concession that the court's jurisdictional decision was erroneous, we reverse it and remand for such further proceedings as may now be appropriate.

## II. Garrett

¶16 Cheek maintains that the state district court erred in dismissing her unnecessary rigor claims against Garrett on res judicata grounds.[5] "The doctrine of res judicata embraces two

---

5. "Federal law controls the claim-preclusive effect of prior federal judgments." *Haik v. Salt Lake City Corp.*, 2017 UT 14, ¶ 8, 393 P.3d 285. But depending on the type of jurisdiction that the federal court is exercising, federal law may require a subsequent court to apply state preclusion law. *See id.* For example, where a federal court's jurisdiction is based on diversity of citizenship and the federal court resolves questions of state law, the

(continued…)

distinct branches: claim preclusion and issue preclusion." *Mack v. Utah State Dep't of Commerce*, 2009 UT 47, ¶ 29, 221 P.3d 194 (citation and internal quotation marks omitted). The district court's decision rested on the claim preclusion branch.

> Whether a claim is precluded from relitigation depends on a three-part test. First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or be one that could and should have been raised in the first action. Third, the first suit must have resulted in a final judgment on the merits.

*Id.* (citation and internal quotation marks omitted).

¶17 Cheek does not challenge the state district court's determination that the first two prongs of the claim-preclusion test were satisfied as to Garrett. Rather, she challenges only its

---

(…continued)

subsequent court must apply the preclusion rules of the state whose law was applied by the federal court. *See id.* But where, as here, the federal court exercises supplemental jurisdiction, it is unclear what law a subsequent court should apply. Although this appears to be an open question, "it is of no practical consequence" here, as our claim preclusion laws are "virtually identical" to the federal rules. *Id.* ¶ 9 (citation and internal quotation marks omitted). And because both parties and the state district court "based their arguments on Utah [preclusion] law"; because our analysis under Utah law "is virtually identical to that under federal common law"; and because "our ultimate conclusion would be the same regardless of whether we applied federal or state law," we elect to apply Utah law to our analysis here. *See Oman v. Davis School Dist.*, 2008 UT 70, ¶ 28 n.5, 194 P.3d 956.

determination that the federal district court's decision dismissing Garrett from the first action constituted a final judgment "on the merits."[6] We conclude that Cheek has failed to carry her burden of persuasion on this issue.

¶18    Our Supreme Court has explained that the phrase "'[o]n the merits' is a term of art" referring to a judgment "rendered only after a court has evaluated the relevant evidence and the parties' substantive arguments." *Miller v. USAA Cas. Ins. Co.*, 2002 UT 6, ¶ 42 n.6, 44 P.3d 663. Further, "[i]n the context of res judicata, 'merits' has been interpreted to mean real or substantial grounds of action or defense as distinguished from matters of practice, procedure, jurisdiction or form." *Utah State Dep't of Social Services v. Ruscetta*, 742 P.2d 114, 116 (Utah Ct. App. 1987). Pointing to these principles, Cheek maintains that the federal district court's order dismissing Garrett from the federal action

---

6. Cheek also contends that the federal district court's order dismissing Garrett from the federal suit was not "final" for res judicata purposes because the other Defendants had yet to be dismissed from the action when the order was entered. This argument is unpersuasive. "In deciding whether the [district] court's order . . . constitutes a final judgment and as such invokes the doctrine of res judicata we are guided by Rule 54(b) of the Utah Rules of Civil Procedure[.]" *Bernard v. Attebury*, 629 P.2d 892, 895 (Utah 1981). That rule does indeed provide that "any order . . . that adjudicates . . . the rights and liabilities of fewer than all the parties does not end the action as to any of the . . . parties." Utah R. Civ. P. 54(b). However, it further provides that such nonfinal orders "may be changed at any time *before* the entry of judgment adjudicating all . . . the rights and liabilities of all the parties." *Id.* (emphasis added). Accordingly, as soon as the federal district court entered its order adjudicating the last of Cheek's claims, its order dismissing Garrett became final.

could not have been a decision on the merits because the court dismissed him from the action without ever directly addressing the substantive law of unnecessary rigor.

¶19 Despite the logic of her position, we disagree. In the courts of this state and the federal system alike, even though it does not involve the usual hallmarks of a resolution on the merits, a successful motion to dismiss for failure to state a claim results in a final judgment on the merits and "'is accorded res judicata effect.'" *Mack*, 2009 UT 47, ¶ 29 (quoting *FDIC v. Paul*, 735 F. Supp. 375, 380 (D. Utah 1990)). Cheek does not address *Mack* except to say that Garrett was not dismissed on a motion for failure to state a claim and that "not all rulings on a motion to dismiss are on the merits." But both the state district court and Iron County treat Garrett's federal court motion to dismiss as one for failure to state a claim, and Cheek has not included the motion in the record on appeal[7] or otherwise shown that Garrett moved under a different rule. Accordingly, Cheek has failed to persuade us that *Mack* does not apply and that the state district court erred in concluding her state court action against Garrett was barred by reason of the preclusive effect of the federal court's dismissal of her federal complaint for failure to state an unnecessary rigor claim against Garrett.

### III. Iron County

¶20 Cheek also maintains that the state district court erred in determining that it did not have personal jurisdiction over Iron County as a result of her defective service of process. While

---

7. The appellant has the duty to provide the appellate court with all "materials in the record that are the subject of the dispute and that are of central importance to the determination of the issues presented for review." Utah R. App. P. 24(a)(12)(C); *see also id.* R. 11(c) (delineating the appellant's duty to ensure that the appellate court has all necessary materials for review).

conceding that her service upon the County Recorder did not satisfy rule 4(d) of the Utah Rules of Civil Procedure, *see* Utah R. Civ. P. 4(d)(1)(G) ("Upon a county, [personal service must be made] by delivering a copy of the summons and complaint . . . to the *county clerk*[.]") (emphasis added), she maintains that the court exerted jurisdiction over Iron County all the same by operation of the now defunct rule 4(b)(ii). Again, we conclude that Cheek has failed to carry her burden of persuasion.

¶21 When the district court entered its order dismissing Iron County from the action, rule 4(b) of the Utah Rules of Civil Procedure provided that, "[i]n any action brought against two or more defendants on which service has been timely obtained upon one of them, (A) the plaintiff may proceed against those served, and (B) the others may be served or appear[8] at any time

---

8. Cheek also contends that the district court had personal jurisdiction over Iron County notwithstanding her defective service because Iron County made a general appearance in the case. *See Barlow v. Cappo*, 821 P.2d 465, 466–67 (Utah Ct. App. 1991) (explaining that a defendant consents to the jurisdiction of the trial court by making a general appearance in the case). But she did not preserve this issue by raising it below. "Generally, a party cannot raise an issue for the first time on appeal." *LaChance v. Richman*, 2011 UT App 40, ¶ 15, 248 P.3d 1020. Rather, an issue must be presented "to the trial court in such a way that the trial court has an opportunity to rule on that issue." *Id.* (citation and internal quotation marks omitted). Because Cheek did not give the district court an opportunity to address this argument, and because she failed to argue an exception to the preservation rule, we decline to reach it. *See State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443.

prior to trial." Utah R. Civ. P. 4(b)(ii) (2016).[9] Cheek contends that the court's decision to dismiss Iron County from the action was premature under this rule because the sufficiency of her service upon the other Defendants is undisputed, and the court rendered its decision prior to the trial stage. In other words, given that the other Defendants had been properly served, Cheek argues that Iron County was not permitted to move for dismissal on defective service grounds until the first day of trial.[10]

¶22   Cheek concedes, however, that her argument conflicts with our Supreme Court's decision in *Hunter v. Sunrise Title Co.*, 2004 UT 1, 84 P.3d 1163. In that case, although the plaintiff named three defendants in his complaint, he did not properly serve the third defendant until the first two had already been dismissed from the action "with prejudice and on the merits." *Id.* ¶ 10. For that reason, the district court determined that the plaintiff could not seek shelter under rule 4(b)(ii) and was therefore subject to the ordinary 120-day timeframe for effecting service following the filing of the complaint. *Id.* ¶ 5. Accordingly, because the plaintiff had served the third defendant well outside of that timeframe, the court granted the defendant's motion to dismiss. *Id.* Affirming, the Supreme Court stated the rule applicable here in unequivocal terms:

---

9. Our Supreme Court repealed rule 4(b)(ii) by amendment, effective November 1, 2016. *See* Utah R. Civ. P. 4 amendment notes (2017).

10. Ten months elapsed from the date Iron County moved to dismiss for defective service to the date that the motion was granted. Why Cheek did not simply re-serve Iron County in the interim and correct the mistake she now concedes she made, we cannot say.

> [T]he co-defendant provision of rule 4(b) . . . allowing service "at any time prior to trial" does not apply where . . . all other co-defendants have been formally dismissed. If all served co-defendants are formally dismissed from an action, rule 4(b) mandates service upon at least one remaining unserved defendant within 120 days of the date of filing of the complaint, absent the district court's timely grant of an extension. A plaintiff's failure to satisfy the 120-day requirement or obtain an extension[11] results in dismissal of the complaint as untimely . . . .

*Id.* ¶ 14.

¶23 Cheek asks us to carve out an exception to the rule stated in *Hunter*. She maintains that her case is distinguishable because, unlike the dismissed defendants in *Hunter*, here "neither of the two served Defendants should have been dismissed." But while Cheek has successfully convinced us that the district court improperly dismissed one of the Defendants, she does not explain why this distinction compels us to deviate from binding precedent.

---

11. Cheek also contends that reversal is warranted even if she cannot obtain shelter under rule 4(b)(ii) because she "requested . . . an extension to remedy her failure to properly serve Iron County" before the district court entered its dismissal order. Iron County argues that this is a mischaracterization of the record. Regardless, it is undisputed that the court did not *grant* any such extension request, and Cheek has not argued that the court's inaction in this regard was an abuse of its discretion. *See Warner v. Warner*, 2014 UT App 16, ¶ 15, 319 P.3d 711 (explaining that a court's decision whether to grant an extension of the time limits set out in the Utah Rules of Civil Procedure is reviewed for abuse of discretion).

¶24   "An appellate court is not a depository into which parties may dump the burden of their argument and research." *Andersen v. Andersen*, 2015 UT App 260, ¶ 6, 361 P.3d 698 (per curiam). Accordingly, rule 24 of the Utah Rules of Appellate Procedure provides that an appellant's brief must contain an argument "explain[ing], with reasoned analysis supported by citations to legal authority . . . , why the party should prevail on appeal." Utah R. App. P. 24(a)(8). "An issue is inadequately briefed when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." *Mercado v. Hill*, 2012 UT App 44, ¶ 11, 273 P.3d 385 (citation and internal quotation marks omitted).

¶25   Cheek fails to carry her burden on appeal because she makes no attempt to present "reasoned analysis supported by citations to legal authority," *see* Utah R. App. P. 24(a)(8), to convince us that the rule in *Hunter* should not apply in her case. In fact, the entirety of her argument is limited to a single, three-sentence paragraph, which takes up not even one half of one page of her opening brief. Of course, the strength of an appellant's argument does not necessarily increase in proportion with its length. Yet here, given that Cheek's scant argument contains neither reasons nor legal citations in support of her position, there can be no question that Cheek's argument is "so lacking as to shift the burden of research and argument to the reviewing court." *See Hill*, 2012 UT App 44, ¶ 11 (citation and internal quotation marks omitted).

¶26   Further, we observe that the persuasiveness of Cheek's basic position is far from obvious. In fact, there is nothing in *Hunter* suggesting that the scope of its holding is limited to cases in which all served defendants have been *properly* dismissed. On the contrary, the Court expressly held that rule 4(b)(ii) did not apply whenever the served defendants had been "formally dismissed." *Hunter*, 2004 UT 1, ¶ 14. Moreover, the reasoning adduced by the Court in support of its holding seems to suggest that the propriety of the district court's decision dismissing one

defendant is *not* a salient consideration when evaluating the effect of the plaintiff's failure to serve another defendant. In explaining its decision, the court began by emphasizing that "court rules dictate that plaintiffs pursue their claims in an expeditious manner." *Id.* ¶ 9. It then proceeded to quote with approval the following language from the Washington Supreme Court: "'A plaintiff who fails to serve each defendant risks losing the right to proceed against unserved defendants if the served defendant is dismissed.'" *Id.* ¶ 9 (brackets omitted) (quoting *Sidis v. Brodie/Dohrmann, Inc.*, 815 P.2d 781, 783 (Wash. 1991)). No mention was made of the dismissal having to be proper in an absolute sense. And because predicating the applicability of rule 4(b)(ii) upon the result of a later appeal would most certainly not further the goal of encouraging the expeditious resolution of claims, it is logical to conclude that *Hunter* applies regardless of whether the district court's decision dismissing a served defendant is eventually affirmed or reversed on appeal.

¶27 Accordingly, Cheek has failed to persuade us that the *Hunter* exception to rule 4(b)(ii) did not apply if a served defendant was dismissed improperly. We therefore affirm the court's decision that Cheek's defective service did not effectively bring Iron County under its jurisdiction and that Cheek could not avail herself of rule 4(b)(ii)'s protection.

CONCLUSION

¶28 For the foregoing reasons, we reverse the district court's decisions dismissing Cedar City from the action but affirm its decision to dismiss Iron County and Garrett. We remand the case for further proceedings consistent with this opinion.

———————